## 40032. COTTON STATES MUTUAL INSURANCE COMPANY v. McFATHER et al.

HILL, Chief Justice.

This is another case arising from *Jones v. State Farm Mut. Auto. Ins. Co.,* 156 Ga. App. 230 (274 SE2d 623) (1980) (cert. dismissed, July 7, 1981), overruled in *Atlanta Cas. Co. v. Flewellen,* 164 Ga. App. 885 (300 SE2d 166) (1982), which was itself reversed in *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709 (300 SE2d 673) (1983). Allegedly new issues are presented as to the constitutionality of the Georgia Motor Vehicle Accident Reparations Act, OCGA § 33-34-1 et seq. (Code Ann. § 56-3401b et seq.) (no-fault insurance act), as well as the question of whether or not, as a matter of law, insurance companies should be subject to bad faith penalties for failing to pay *Jones'* claims before this court's decision in *Flewellen* was rendered and became final.

The *Jones/Flewellen* controversy has centered around the interpretation of OCGA § 33-34-5 (b) (Code Ann. § 56-3404b): "*Each application* for a policy of motor vehicle liability insurance sold in this state must contain *separate spaces* for the insured to indicate his acceptance or rejection of *each of the optional coverages* listed in subsection (a) of this Code section and no such policy shall be issued in this state unless *these spaces are completed and signed* by the prospective insured." (Emphasis supplied.)

In *Jones v. State Farm Mut. Auto. Ins. Co.,* supra, 156 Ga. App. at (1), a panel of the Court of Appeals held that the no-fault act required insurance companies to offer $50,000 coverage for PIP benefits which could be reduced to a minimum of $5,000 PIP coverage at the insured's option. The court held that insurance companies, however, were required to obtain written and signed acceptance or rejection of each of these optional insurance benefits. Failing that, "[t]his statute contemplates that insureds who have not had an opportunity to accept or reject the optional no-fault coverage required to be offered under Code Ann. § 56-3404b (a) [now OCGA §

33-34-5 (a)] are deemed to have been given a 'continuing' offer of such coverage from the date of the issuance of the liability policy until 30 days after being given the opportunity in writing to accept or reject the coverage." *Jones,* supra at p. 234. After the writ of certiorari was granted by this court, it was then dismissed on July 7, 1981.

Thereafter, on December 1, 1982, in *Atlanta Cas. Co. v. Flewellen,* supra at pp. 889-890, the full Court of Appeals in a 5 to 4 decision re-examined and overruled *Jones,* finding that the separate signature requirement to show acceptance or rejection of each optional coverage literally mandated by the statute, could not have been intended by the legislature, and that it was acceptable under the statute for the insured to indicate approval of the choices made on the form by one signature demonstrating awareness of the availability of the options. In overruling *Jones,* as opposed to distinguishing it, the majority appeared to have approved the form used in *Jones* (see 164 Ga. App. at 895).

This court granted certiorari and, on March 3, 1983, in *Flewellen v. Atlanta Cas. Co.,* supra at p. 711, held "that the requirements of subsection (b) are satisfied by two signatures, one for acceptance or rejection of optional PIP and another to indicate acceptance or rejection of vehicle damage coverage." We also concluded that since under the statute $50,000 PIP is the amount the insurer must offer, and that amount must be specifically rejected in writing, "[t]he insured has the right to demand and receive the benefit of $50,000 coverage upon tender by the insured of such additional premium as may be due and filing of proof of loss by the injured party." Id. at p. 712. Rehearing was denied in *Flewellen* on March 23, 1983.

In the case now before us, Carl and Ann McFather were killed in an automobile accident on August 9, 1979. On October 25, 1979, personal injury benefits of $5,000 each were paid their administrators by their insurer, Cotton States Mutual Insurance Company. After *Jones,* the McFathers' administrators made demand on October 30, 1981, on Cotton States for the optional PIP benefits for each of their parents. After receiving the demand, Cotton States sought and received an extension of time, until December 21, 1981, in order to decide how to treat such Jones' claims.[1] Such a time extension was needed because OCGA § 33-34-6 (b) (Code Ann. § 56-3406b) requires that no-fault benefits be paid within 30 days of a demand and proof of loss by the insured. "In the event the insurer fails to pay each benefit when due, the person entitled to the benefits may bring an action to

---

[1] As for Cotton States' motive for seeking the extension of time, see footnote 2, infra.

recover them and the insurer must show that its failure or refusal to pay was in good faith, otherwise the insurer shall be liable for a penalty not exceeding 25 percent of the amount due and reasonable attorney's fees." OCGA § 33-34-6 (c) (Code Ann. § 56-3406b) provides additionally that "in the event that an insurer fails or refuses to pay a person the benefits which the person is entitled to under this chapter within 60 days after proper proof of loss has been filed, the person may bring an action to recover the benefits; and if the insurer fails to prove that its failure or refusal to pay the benefits was in good faith, the insurer shall be subject to punitive damages."

Cotton States denied the McFathers' claim for additional PIP benefits on December 17, 1981. The McFathers then filed this suit on February 8, 1982, seeking the 25% penalty, attorney fees and punitive damages under the statutory penalty provisions, for failing to pay their claims within the allotted times. OCGA § 33-34-6 (b), (c) (Code Ann. § 56-3406b), supra. The trial court directed a verdict holding that the McFathers were entitled to $90,000 optional PIP benefits as a matter of law, and the jury returned its verdict for $22,500 as the statutory penalty, $36,000 attorney fees and $138,000 in punitive damages. While Cotton States' motion for new trial was pending, we decided *Flewellen.* Cotton States appeals.

1. Cotton States argues that the no-fault act is unconstitutional on equal protection grounds insofar as OCGA § 33-34-6 (b), (c) (Code Ann. § 56-3406b), supra, places the burden upon the insurance company of proving its good faith in order to avoid penalties. Cotton States argues that in all insurance matters other than automobile no-fault, the burden is upon the insured to show bad faith by the insurance company in order to recover penalties. E.g., OCGA § 33-4-6 (Code Ann. § 56-1206); see also OCGA §§ 33-5-58 (Code Ann. § 56-611); 33-7-11(j) (Code Ann. § 56-407.1).

In *Atlanta Cas. Co. v. Jones,* 247 Ga. 238, 241 (275 SE2d 328) (1981), we said: "Nor do we believe the code section violates equal protection simply because other types of insurers do not have to prove good faith to avoid punitive damages (rather plaintiffs generally have to show *bad* faith). We cannot say that the legislature has placed automobile insurance carriers in an arbitrary class-ification for no valid reason." (Emphasis in original.) Although more could be said for classifying no-fault insurance separately from other insurance, suffice it to say that Cotton States' equal protection challenge has already been decided adversely to its contentions here.

2. Cotton States challenges the constitutionality of the no-fault act, as interpreted in *Flewellen,* on substantive due process grounds. It contends that the state has failed to carry its burden of showing, in light of *Flewellen,* that the signature requirement coupled with the

insureds' right to make a later demand for the higher optional coverage upon tender of the premiums owed is a legitimate *means* of reaching the admittedly legitimate legislative *goal* that insureds knowingly and voluntary reject optional coverage in favor of minimum mandatory PIP coverage. It argues that, as a result of *Flewellen,* it has been subjected to "economic devastation" because the premiums collected on the $5,000 minimum mandatory PIP coverage are insufficient to pay all the claimants who have had accidents since 1975 and who can now retroactively increase their coverage to $50,000. Furthermore, it points out that it may be subject to penalties, attorney fees and punitive damages for resisting the payment of these claims.

Normally the burden is upon the challenger to show that a statute is unconstitutional. In arguing that the state must bear the burden of proving that the means used are reasonably related to the legislative goal of prompt payment of no-fault benefits, Cotton States relies on Debra P. v. Turlington, 644 F2d 397 (5th Cir. 1981). In Turlington, a class action, a group of minority students, who failed the first Florida functional literacy competency examination required under the Educational Accountability Act as a requirement for graduation from a Florida high school, challenged the test on due process grounds. Many students represented by plaintiffs failed the test. The court held that since the state had failed to show that the students had been taught what was required to pass the test, it had failed to meet substantive due process requirements of fairness, and the case was remanded for further hearings on that ground.

The Turlington decision is not applicable here. Although more sophisticated distinctions are available, suffice it to say that Cotton States is not a student educated by the state being denied a diploma by the state based upon a new testing requirement and a test prepared by the state covering matters not included in the student's education. In *Flewellen,* supra, 250 Ga. at p. 714, we said: "[W]e do not agree that to require post-accident coverage results in substantial injustice. This finding follows from the holding that the *mandate of the law was clear* and the obvious purpose of making the insured aware of the absolute right to minimum optional benefits. . . . The law has been in effect since 1975, Ga. L. 1974, p. 113, and the insurer proceeded at its own risk in failing to comply with the statute when issuing this policy in 1979." (Emphasis supplied.) Therefore, we find that the no-fault act and the consequences which follow from the insurer's failure to comply with it, as set forth in *Flewellen,* does not violate Cotton States' substantive due process rights.

The trial court did not err in overruling Cotton States' constitutional claims, nor in granting the McFathers' motion for

directed verdict that they were entitled as a matter of law to optional PIP benefits.

3. Cotton States also argues that it should not be subjected to paying bad faith penalties as a matter of law for not paying *Jones* claims during the period after *Jones* and before *Flewellen* was final. It contends that after *Jones* the law was unsettled and relies on the words "under these circumstances" in *GEICO v. Mooney,* 250 Ga. 760, 763 (300 SE2d 799) (1983): "In view of the fact that other insurers in defending claims brought under OCGA § 33-34-5 (Code Ann. § 56-3404b) were able to secure a reversal of *Jones* in *Atlanta Cas. Co. v. Flewellen,* 164 Ga. App. 885 (300 SE2d 166) (1982), reversed by this court in *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709, supra, we cannot say that the insurer *under these circumstances* defended in bad faith." (Emphasis supplied.) We recognize the differences between the factual posture of this case and the *GEICO* case as pointed out by the McFathers. However, as the *GEICO* opinion shows, the phrase "under these circumstances" refers to the history of the *Jones* and *Flewellen* decisions, not to the facts in the *GEICO* case. Consequently, the holding in *GEICO* controls the outcome of the case before us. While it is true that we held in *Flewellen* that "the mandate of the law was clear" (quoted above), its interpretation by the bench, bar, insurers and insureds was obviously less so. Some insurers argued that one signature at the end of the application was sufficient; some insureds argued that each optional amount of PIP ($10,000; $25,000; $50,000) accepted or rejected must be signed separately, see *Flewellen,* supra, 250 Ga. at 711; and trial courts were reaching opposite results. See *Atlanta Cas. Co. v. Flewellen,* supra, 164 Ga. App. at 886-887; State Farm Fire & Cas. Co. v. Sweat, Case No. C81-2056 (N.D. Ga. March 11, 1982). Moreover, in *Flewellen,* we did not adopt the continuing offer/reformation rationale of the *Jones* decision.

"Under these circumstances," *GEICO,* supra, we find that insurance companies which did not pay *Jones* claims while *Flewellen* was pending should not be penalized with bad faith penalties and damages under OCGA § 33-34-6 (b) (c) (Code Ann. § 56-3406b). We therefore hold that insurance companies which tendered the optional PIP benefits owed upon proper demands of their insureds within the statutory 30 and 60 day periods after March 23, 1983, when the motion for rehearing in *Flewellen* was overruled, are not subject to statutory penalties, attorney fees and punitive damages. *GEICO v. Mooney,* supra; see also *State Farm Mut. Ins. Co. v. Bass,* 231 Ga. 269 (201 SE2d 444) (1973). *Binns v. MARTA,* 250 Ga. 847 (301 SE2d 877) (1983), was decided on a question certified by the Court of Appeals. The question certified was not the question raised here, and *Binns* is

thus inapposite.

In the case before us, Cotton States states that it tendered the optional PIP benefits within 30 days of March 23, 1983, and thereby satisfied the time requirements of OCGA § 33-34-6 (b) and (c) (Code Ann. § 56-3406b). The insureds dispute this assertion.[2] We therefore remand this case to the trial judge for resolution of this issue.

4. In light of the representation of Cotton States and the result reached in Division 3, we need not address the remaining enumerations of error.

*Judgment affirmed in part; remanded in part. All the Justices concur, except Marshall, P. J., who concurs in the judgment only, and Smith, J., who dissents as to Division 3 and the judgment.*

DECIDED DECEMBER 5, 1983 —
REHEARING DENIED DECEMBER 20, 1983 AND JANUARY 18, 1984.

*Spivey, Carlton & Edenfield, J. Franklin Edenfield,* for appellant.

*Jesse G. Bowles III, Hatcher, Stubbs, Land, Hollis & Rothschild, Albert W. Stubbs,* for appellees.

---

[2] The McFathers also argue that Cotton States should nevertheless be liable for these bad faith damages for taking advantage of a professional courtesy (the extension of time referred to at fn. 1) by using the extension to file a class action in federal court and seek an ex parte order to enjoin all *Jones* claims against it. While the court does not approve such tactics, the federal court has already penalized Cotton States by vacating the ex parte order. We note here that Cotton States' misrepresentation caused no delay in payment of these benefits beyond that of the *Flewellen* decision. We therefore cannot uphold the verdict on this basis.