**COTTON STATES MUTUAL INSURANCE COMPANY, et al., Plaintiffs-Appellants,**

v.

**J.O. ANDERSON, Jr., et al., Defendants-Appellees.**

No. 83–8418.

United States Court of Appeals, Eleventh Circuit.

Dec. 26, 1984.

G. Conley Ingram, Atlanta, Ga., for plaintiffs-appellants.

James E. Cornwell, Jr., Toccoa, Ga., for defendants-appellees.

James C. Pratt, Asst. Atty. Gen., Atlanta, Ga., for State.

Before FAY and JOHNSON, Circuit Judges, and YOUNG*, District Judge.

FAY, Circuit Judge:

This is an appeal from an adverse summary judgment ruling, in which the district court refused to declare O.C.G.A. § 33–34–5(b) (1982) (the Georgia No-Fault Act) unconstitutional on due process, equal protection and other constitutional grounds. We

affirm. Although appellant's argument is extremely persuasive, after full consideration, we conclude that we should not use the statute's "tortured history" [1] of interpretation in the Georgia courts as a basis for holding it unconstitutional.

## A. COLLATERAL ESTOPPEL

As an initial matter, we must dispose of the question, raised by the appellee State of Georgia for the first time at oral argument, of whether appellant is collaterally estopped from raising these constitutional objections to the No-Fault Act. Appellee grounds this objection on the fact that appellant had raised almost identical arguments in prior litigation before the Georgia courts, and those issues were decided adversely to the appellant. *See Cotton States Mutual Insurance Co. v. McFather*, 251 Ga. 739, 741, 309 S.E.2d 799, 801–02 (1983) (hereinafter *McFather*). Although appellee's collateral estoppel argument is a formidable one, we will exercise the discretion available to us, *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979), and reach the merits of this case.

We recognize that appellee did not raise this issue at the trial level; nevertheless we also recognize that appellee was unable to do so because of the parallel progression of the two cases in which the constitutional objections were made. The parties at bar filed their briefs in the instant case prior to the time that the state court decision, which held adversely to appellant on the constitutional claims, was issued.[2] Under these circumstances, we hold that the collateral estoppel issue,

---

* Honorable George C. Young, U.S. District Judge for the Middle District of Florida, sitting by designation.

1. See *infra* note 6.

2. The instant case was filed on December 23, 1981. Judgment was entered on May 27, 1983. In a similar case, filed February 8, 1982, appellant raised, as a defense, the same basic constitutional objections as were raised here. On April 5, 1982, appellant moved to stay the state trial court proceeding on the ground that its

federal constitutional issues were pending in the case at bar. However, the motion was denied on June 15, 1982, and judgment for the plaintiffs was entered on July 7, 1982. An appeal was taken to the Georgia Supreme Court, and Cotton States' constitutional issues were addressed and again denied. *See Cotton States Mutual Insurance Co. v. McFather*, 251 Ga. 739, 741, 309 S.E.2d 799, 801–02 (1983). However, the *McFather* decision was not handed down until after the briefs on this appeal were filed.

though not raised in the district court, was not waived.

▆▆ Collateral estoppel is properly invoked "if the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action." *Williams v. Bennett*, 689 F.2d 1370, 1381 (11th Cir.1982) (upholding the offensive use of collateral estoppel with regard to constitutional claims). It is clear that these three criteria are met in the case at bar. The constitutional issues raised in the *McFather* litigation were virtually identical to those raised in the instant case. Though the Georgia Supreme Court's treatment of those issues was admittedly cursory, they were specifically addressed and decided by that court. Furthermore, a litigant may assert collateral estoppel, though he was not a party to the prior suit. *Bank of Heflin v. Landmark Inns*, 604 F.2d 354 (5th Cir.1979). Therefore, the State of Georgia is free to invoke collateral estoppel offensively against appellant.

The offensive use of collateral estoppel raises particular judicial concerns; it is governed by slightly different principles than the historic defensive use of the issue preclusion claim. *See Nations v. Sun Oil Co.*, 705 F.2d 742, 744 (5th Cir.1983) ("Collateral estoppel is an equitable doctrine. Offensive collateral estoppel is even a cut above that in the scale of equitable values."); *Johnson v. United States*, 576 F.2d 606, 614 (5th Cir.1978), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981). The Supreme Court has only recently approved the offensive use of collateral estoppel. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 522 (1979). Moreover, the Court has cautioned that fairness to both parties must be considered when it is applied. *Id.* at 331, 99 S.Ct. at 651. Of primary importance is whether the opposing party had an adequate incentive to litigate vigorously in the previous proceedings and whether he received a full and fair hearing in that proceeding.

▆▆ Once, however, the litigant has had a full and fair opportunity to litigate his claim, the trial court has broad discretion in deciding whether offensive collateral estoppel is appropriate. *See Parklane Hosiery*, 439 U.S. at 331, 99 S.Ct. at 651. The Supreme Court has recently reaffirmed that collateral estoppel promotes "the comity between state and federal courts that has been recognized as a bulwark of the federal system." *Allen v. McCurry*, 449 U.S. 90, 95–6, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). The principles of federalism and comity are implicated in the instant case. Appellant is urging the federal courts to declare the state statute unconstitutional (by federal standards) because the state courts have experienced difficulty in their interpretations. At least in the context of civil rights suits, the Supreme Court has stated that Congress did not intend "to allow relitigation of federal issues decided after a full and fair hearing in a state court simply because the state court's decision may have been erroneous." *Id.* at 101, 101 S.Ct. at 418. Therefore, the confusing interpretations given this statute by the state courts should not be a basis for denying the preclusive effect of collateral estoppel.

▆▆ However, the Supreme Court has also noted that preclusion may be inappropriate, particularly in constitutional adjudication, when issues of law arise in successive actions. *Montana v. United States*, 440 U.S. 147, 160–63, 99 S.Ct. 970, 977–78, 59 L.Ed.2d 210 (1979). In addition, special difficulties arise when precluding a party who did not have the initiative in the prior action. *See Johnson*, 576 F.2d at 614. Moreover, this circuit has recently noted that the discretion used when determining if preclusion is appropriate is not unlimited. Abuse of that discretion will result if "there is a significant likelihood of substantial unfairness" to the parties if preclusion is applied. *Deweese v. Town of Palm Beach*, 688 F.2d 731, 734 (11th Cir.1982). The likelihood of unfairness increases when conflicting rulings involve the same defendant.

Adopting this broad discretion as our own standard in determining the collateral estoppel question, we decide not to apply collateral estoppel in the instant case. In light of the unique history of the statute challenged here[3] and the important principles of federalism involved when a federal court is asked to determine the constitutionality of a state statute, we proceed to the merits of this case.

## B. CONSTITUTIONAL CHALLENGES TO STATE STATUTES

Federal courts must be slow to declare state statutes unconstitutional, *see Ford v. Strickland,* 676 F.2d 434, 442 (11th Cir.1982) ("[W]e do not sit to question [the state supreme court's] interpretation of that state's statutes"), and they must be especially slow to do so on the ground of the state courts' inability to consistently interpret their own statutes.[4] It is well-settled that "[s]tate courts have the right to construe their own statutes," *Bank of Heflin v. Miles,* 621 F.2d 108, 113 (5th Cir. 1980), and federal courts are bound by that state interpretation. *Id.* at 114. *See also Sanchez v. United States,* 696 F.2d 213, 216 (2d Cir.1982) ("To comply with the principle of comity which undergirds our federal system, we are obliged to give full effect to decisions of New York's highest court on issues involving the application of New York law."). When ruling upon the constitutionality of a state statute, a federal court "may only consider the statute's plain meaning and authoritative state court constructions of the statute." *Florida Businessmen v. State of Florida,* 499 F.Supp. 346, 352 (N.D.Fla.1980).

With this limited[5] scope of review in mind, we now turn to the statute challenged in the instant case. The No-Fault Act, prior to its amendment in 1982, provided that:

> Each application for a policy of motor vehicle liability insurance sold in this state must contain separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (2) of this Code section and no such policy shall be issued in this state unless these spaces are completed and signed by the prospective insured.

O.C.G.A. § 33–34–5(b).

The litigation over this statute exists because of conflicting interpretations as to what burden the statute imposes on no-fault insurers to obtain specific acceptance or rejection of optional coverage from each applicant. We note initially that the No-Fault Act is facially constitutional. *See Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1974) ("[A] state statute should not be deemed facially invalid unless it is not readily subject to a narrowing construction by the state courts...."). *See also Sawyer v. Sandstrom,* 615 F.2d 311, 315 (5th Cir.1980). The Supreme Court has stated that "[i]n evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court ... has proffered." *Hoffman Estates v. Flipside,* 455 U.S. 489, 494 n. 5, 102 S.Ct. 1186, 1191 n. 5, 71 L.Ed.2d 362 (1982). The Georgia Supreme Court has recently attempted to

---

**3.** See *infra* note 6 and accompanying text. Judicial economy dictates that we deal with this question of collateral estoppel, rather than remand the case to the district court. This is particularly true in light of the fact that the district court has already addressed the merits of the case.

**4.** Appellant relies upon *United States v. Cohen Grocery Co.,* 255 U.S. 81, 89–90, 41 S.Ct. 298, 300, 65 L.Ed. 516 (1921), for the proposition that "the conflicting results which have arisen from the painstaking attempts of enlightened judges" in interpreting a statute provide "abun-

dant demonstration of the unconstitutional vagueness" (appellant's brief at 25) of the Georgia statute. The *Cohen* case, however, involved the interpretation of a federal statute; therefore, the principles of comity and federalism invoked here, *see Rowe v. Fauver,* 533 F.Supp. 1239, 1245 n. 8 (D.N.J.1982), which dictate great deference to the interpretation given to a state statute by its own state courts, were not present.

**5.** Limited in the sense of accepting the interpretation given the statute by the Georgia Supreme Court.

clarify its position as to the meaning of the statute. *See Flewellan v. Atlanta Casualty Co.*, 250 Ga. 709, 300 S.E.2d 673 (1983).

A brief description of the history of the Georgia courts' attempts to interpret the No-Fault Act illustrates the confusion the statute has wrought.[6] The No-Fault Act's tortured history originated with the Georgia Court of Appeals' decision in *Jones v. State Farm Mutual Auto Insurance Co.*, 156 Ga.App. 230, 274 S.E.2d 623 (1980), *cert. dismissed*, 248 Ga. 46, 280 S.E.2d 837 (1981) (hereinafter *"Jones"*). (Certiorari was initially granted in *Jones*, but then dismissed by the Georgia Supreme Court as improvidently granted.) *Jones* interpreted the No-Fault Act to require multiple signature lines on applications to indicate acceptance or rejection of optional personal injury protection (PIP) coverage. On December 1, 1982, the Georgia Court of Appeals, *en banc*, overruled *Jones*. *Atlanta Casualty Co. v. Flewellen*, 164 Ga.App. 885, 300 S.E.2d 166 (1982). In the *Flewellen* decision, the Court of Appeals stated that "to require a separate and repetitive signature by each subspace defies the rules of logic and reason and blindly applies a rule of literalness." *Id.* at 888, 300 S.E.2d at 169. Shortly thereafter, however, the Georgia Supreme Court, having granted certiorari *sua sponte*, reversed the Court of Appeals. In that decision, the court held that two signature lines, one indicating acceptance or rejection of optional PIP and another to indicate acceptance or rejection of vehicle damage coverage, would meet the statutory requirements. *Flewellen v. Atlanta Casualty Co.*, 250 Ga. 709, 711, 300 S.E.2d 673, 676 (1983). Since the *Flewellen* decision, the Georgia Supreme Court has held that substantial compliance is sufficient to meet the statutory requirements. *St. Paul Fire & Marine Insurance Co. v. Nixon*, 252 Ga. 469, 314 S.E.2d 215 (1984). However, if the information regarding optional PIP coverage is contained in a small square in an abbreviated form, then the insurance application will not meet the substantial compliance test. *Tolison v. Georgia Farm Bureau Mutual Insurance Co.*, 253 Ga. 97, 317 S.E.2d 185 (1984).[7]

Given the background of this confused judicial history,[8] we now turn to the constitutional objections raised by appellant. Two basic constitutional arguments are made. First, appellant contends that the statute is unconstitutionally vague, and therefore constitutes a denial of its procedural due process rights. Second, appellant contends that the penalties and punitive damages provisions of the No-Fault Act contravene its due process and equal protection rights.

### 1. *Void for Vagueness*

 Undoubtedly, appellant's strongest argument is that the statute is unconstitutionally vague. There is no

---

**6.** As one of the justices on the Georgia Supreme Court, in a dissenting opinion to a recent interpretative attempt, stated:

The judicial history of OCGA § 33–34–5 is not a happy or proud one. We have seen the interpretation of this statute fluctuate from strict to liberal, back to strict, and now, alas, back to liberal.... One of the more serious obligations placed upon the shoulders of a court of last resort is to insure the predictability of the law. The majority's retreat to substantial compliance makes scant contributions to this cause.

*St. Paul Fire & Marine Insurance Co. v. Nixon*, 252 Ga. 469, 471–72, 314 S.E.2d 215, 217 (1984).

**7.** For other cases addressing the issue of the statutory sufficiency of an insurance application, *see, e.g., Jones v. Employers Insurance of Wausau*, 96 F.R.D. 227 (N.D.Ga.1982); *Southern Trust Insurance Co. v. Griner*, 550 F.Supp. 39 (S.D.Ga.1982); *Chester v. Georgia Mutual Insurance Co.*, 165 Ga.App. 783, 302 S.E.2d 594 (1983); *Dupree v. Travelers Insurance Co.*, 166 Ga.App. 56, 303 S.E.2d 160 (1983); *Georgia Farm Bureau Mutual Insurance Co. v. Musgrove*, 171 Ga.App. 639, 320 S.E.2d 776 (1984). This list is by no means exhaustive. Obviously, this legislation has been a nightmare to the insurance companies and a continuing source of business to personal injury lawyers.

**8.** *See Tolison v. Georgia Farm Bureau Mutual Insurance Co.*, 253 Ga. 97, 101, 317 S.E.2d 185, 189 (1984) (Gregory, Jr., concurring specially) ("What is needed is a clear and easily applied guide which gives a definite answer in each case. Anything less spawns needless litigation. Such a rule was intended by the legislature from the outset and we do a disservice to add confusion.").

question that the Georgia courts have found the No-Fault Act difficult to interpret. However, the standard of review with regard to commercial statutes is a very lenient one. Such statutes are impermissibly vague only if they provide " 'no rule or standard at all.' " *Exxon Corp. v. Busbee,* 644 F.2d 1030, 1033 (5th Cir.), *cert. denied,* 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981) (quoting *A.B. Small Co. v. American Sugar Refining Co.,* 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925)). "Uncertainty ... is not enough for [the commercial regulatory statute] to be unconstitutionally vague; rather, it must be substantially incomprehensible." *Id.* at 1033. Though appellant urges us to adopt a more stringent standard of review,[9] we decline to do so. We hold that under the standard set forth in *Exxon Corp. v. Busbee,* the statute passes constitutional muster.[10]

### 2. *Equal Protection*

■ As with a due process challenge to a commercial regulatory statute, an equal protection challenge is accorded minimal scrutiny. *See Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981). Only a "wholly arbitrary act" can not withstand an equal protection challenge to an economic regulatory statute. *New Orleans v. Dukes,* 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976) *(per curiam).* *See also Minnesota v. Cloverleaf,* 449 U.S. at 464,

101 S.Ct. at 723 (parties asserting an irrational classification may not prevail "so long as the question is debatable"). Appellant asserts that the No-Fault Act violates the equal protection rights of no-fault insurers. However, this constitutional challenge must be evaluated under this deferential standard.

■ The penalty provisions built-in to the No-Fault Act clearly bear a rational relationship to the legislature's dual purpose of encouraging prompt payment and avoiding litigation over no-fault claims. In light of the fact that state legislatures are given wide latitude in the regulation of commercial interests, *New Motor Vehicle Board of California v. Orrin W. Fox Co.,* 439 U.S. 96, 107, 99 S.Ct. 403, 410, 58 L.Ed.2d 361 (1978), the No-Fault Act passes constitutional muster.

Accordingly, the district court's order granting summary judgment in favor of appellee is AFFIRMED.

---

**9.** Appellant asserts that the No-Fault Act is penal in nature, and therefore should be evaluated in terms of the test used in criminal and First Amendment areas. *See Thompson v. Southwest School District,* 483 F.Supp. 1170 (W.D.Mo. 1980). The statute in the instant case is not penal in nature, and we decline to apply the reasoning of the *Thompson* case. The mere fact that a large sum of money is at stake does not necessarily make this a penal statute. In addition, even if construed as a penal statute, a non-criminal statute is not unconstitutionally vague "if persons of reasonable intelligence can derive a core meaning from [the] statute." *High Ol' Times, Inc. v. Busbee,* 673 F.2d 1225, 1228 (11th Cir.1982).

**10.** Although it has not been an easy route, it appears that the Georgia Supreme Court has finally reached a decision as to the appropriate standard under the No-Fault Act. In *Tolison,* the court decided that the insured must be provided with "clear information ... concerning the insured's right to accept or reject optional PIP benefits." *Tolison v. Georgia Farm Bureau Mutual Insurance Co.,* 253 Ga. 97, 100, 317 S.E.2d 185, 188 (1984). To meet the statutory standard, no arbitrary number of signatures is required; rather, the insurance application must "clearly reveal whether [the insured] made a knowing waiver" of the right to optional PIP coverage. *Id.* at 100, 317 S.E.2d at 188.