**BROWNING–FERRIS INDUSTRIES OF ALABAMA, INC.; et al., Plaintiffs,**

v.

**Leigh PEGUES, etc.; et al., Defendants.**

Civ. A. No. 85–H–228–N.

United States District Court,
M.D. Alabama, N.D.

Aug. 4, 1987.

Steiner, Crum & Baker, Walter R. Byars, Montgomery, Ala., for plaintiffs.

David A. Ludder, Alabama Dept. of Environmental Management, Montgomery, Ala., for defendant Pegues.

Rushton Stakely, Johnston & Garrett, Robert A. Huffaker, Montgomery, Ala., and Ball, Ball, Duke & Matthews, Charles B. Patterson, Montgomery, Ala., for defendant Members.

## MEMORANDUM OPINION

HOBBS, Chief Judge.

Browning–Ferris Industries of Alabama (BFI), as well as Joe Pilcher, Jr. and J. W.

Casey, as Executors of the Estate of Harrell Hammonds, deceased, have brought this action seeking a declaration by this Court that an Act of the Alabama Legislature known as the Minus Act (Ala.Code § 22–30–5.1 (1984)) is unconstitutional violating the Fourteenth Amendment and the Commerce Clause (U.S. Const. Art. I, § 8) of the Constitution of the United States. When this case was initially presented to this Court, this Court held that the constitutionality of the Minus Act was not ripe for adjudication. That decision was appealed and the Court of Appeals held that the statute's constitutionality was indeed ripe for adjudication and remanded the case. *Browning–Ferris Indus., Inc. v. Alabama Dept. of Environmental Mgmt.*, 799 F.2d 1473 (11th Cir.1986). On consideration of an agreed stipulation of facts prepared by the parties, this Court now finds unconstitutional the provision in the Act which requires a standardless legislative approval prior to the establishment of a toxic waste facility.

Jurisdiction is conferred pursuant to 28 U.S.C. § 1331 in that plaintiffs seek a declaratory judgment of an actual controversy which challenges an Alabama statute as violative of the Fourteenth Amendment and the Commerce Clause of the United States Constitution.

## FACTS

In 1981 BFI began geological testing of certain Lowndes County, Alabama sites to determine their feasibility as a hazardous waste treatment facility; and in June 1981, BFI acquired options to buy 1,620 acres of land in Lowndes County from E. Harrell Hammonds. Permit applications for a waste facility in Alabama are a two step process. BFI filed Part A of its permit application with the Alabama Department of Environmental Management (ADEM) and with the U.S. Environmental Protection Agency (EPA). In December 1981 BFI was involved in the lengthy and complex process of filing Part B of the application which required a comprehensive technical description of the proposed site and the activities to be conducted thereon. ADEM estimated that the permitting process would cost one million dollars and would last five years. *See Browning–Ferris,* 799 F.2d at p. 1478.

On December 4, 1981, the Alabama Legislature passed the Minus Act which provides:

[No] commercial hazardous waste treatment or disposal site not in existence on or before November 19, 1980 shall be situated without resolution [by the Legislature] giving approval therefor. Provided, however, legislative approval shall not be required for industries with on site treatment, storage, and disposal of their own hazardous wastes.

§ 22–30–5.1 (1984).

Prior to the filing of this suit, it was ADEM's policy to require legislative approval pursuant to the Minus Act before commencing review of any policy application. BFI had unsuccessfully attempted to acquire legislative approval for its Lowndes County site; therefore, its costly and lengthy effort to submit Part B of the application was discontinued as futile because legislative approval could not be obtained.

In February 1985 BFI filed this suit seeking a declaratory judgment that the Minus Act was invalid. Moreover, BFI sought injunctive relief to bar ADEM's consideration of the Minus Act during the permit process. After the filing of this suit ADEM changed its policy and agreed that it would consider BFI's application without prior legislative approval. Based on ADEM's policy reversal, this Court held that the claim for declaratory relief was not ripe for review because BFI would face compliance with the Minus Act only if its application was approved by ADEM and EPA.

The Court of Appeals reversed this decision, holding that the declaratory relief was indeed ripe for review because of the substantial hardship to the plaintiffs if they had to go through the lengthy and expensive process of getting approval of ADEM and EPA only to face the unpredictability of the legislative approval commanded by the Minus Act or an adjudication as to its

constitutionality at the end of the long process of obtaining approval of the agencies, *see Browning–Ferris, supra.* Therefore, this action for declaratory judgment as to the constitutionality of the Minus Act is again before the Court.

## DISCUSSION

### A. *Due Process*

■ Federal courts must be slow to declare state statutes unconstitutional, *see Cotton States Mut. Ins. Co. v. Anderson,* 749 F.2d 663 (11th Cir.1984). It is absolutely clear that the due process clause does not empower the judiciary to sit as a "superlegislature" to weigh the wisdom of legislation. Moreover, it is beyond question that hazardous waste and treatment facilities present serious health and safety problems. Congress and state legislatures are properly concerned about such problems and the Constitution does not prohibit Congress or state legislatures from placing severe restrictions on these facilities. The EPA is a response to this concern on the part of Congress just as ADEM is an entirely appropriate response to this concern by the Alabama Legislature. In short, state regulation of hazardous waste facilities is not per se constitutionally deficient.

The constitutional vice of the Minus Act is the complete absence of standards. There simply are no guidelines spelled out in the provision that the legislature must individually approve any facility devoted solely to the storage of hazardous waste. In other words, the statute does not provide the faintest clue as to what an applicant should do or refrain from doing in order to secure legislative approval. If one applicant for a license is preferred over another as the result of a political favor or for no logical reason at all, the disappointed applicant is without redress under the Minus Act because the discretion of the Legislature is standardless and boundless.

The arbitrariness of such a standardless statute is readily perceived if, for example, the Legislature enacted a statute that provided that no more lawyers could be licensed in Alabama unless their licensing was individually approved by the Legislature. Although the admission of more hazardous waste facilities would probably be regarded by most as somewhat more of a public concern than the admission of more lawyers, this is not the point. The state can and does put restrictions on hazardous waste facilities as well as the admission of lawyers, but it may not provide that a waste facility or a lawyer may be licensed only on the approval of the Legislature with no standard, rules, or guidelines as to which legislative applicants would be favored. In both the hypothetical legislative restriction on lawyers presented here, as well as in the actual situation which here confronts BFI, applicants would have made enormous investments of time and money only to be potentially stymied by an arbitrary standardless process. It would be difficult to conceive of a statute which is more susceptible of arbitrariness in violation of the Fourteenth Amendment than one that gives absolute discreton to a legislature to allow licensing but provides no clue for determining the basis on which a license would be granted.

In *Hornsby v. Allen,* 326 F.2d 605 (5th Cir.1964), the court declared that a licensing system for liquor stores in the City of Atlanta would have to be invalidated if it is determined that there are "no ascertainable standards ... by which an applicant can intelligently seek to qualify for a license...." The court held that only if a legal standard is established and procedural due process is provided may the governing body deny an applicant a license; otherwise, the applicant is denied equal protection in violation of the Fourteenth Amendment. The court in *Hornsby* conceded that the state has every right to regulate or even prohibit traffic in intoxicating liquor in the valid exercise of its police power, but "this is something quite different from a right to act arbitrarily and capriciously."

A further basis for overturning this provision of the Minus Act is that it is unconstitutionally vague. In one sense the provision in the Act is not at all vague. That is, there is nothing vague about the mechanism for approval: there must be a resolu-

tion by the legislature prior to establishment of a new Alabama hazardous waste facility. However, the criteria for such legislative approval are vague to the point of being nonexistent. Commercial regulatory statutes are impermissibly vague if they provide "no rule or standard at all," *see Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663, 669 (11th Cir. 1984); *Exxon Corp. v. Busbee*, 644 F.2d 1030, 1033 (5th Cir. Unit B), *cert. denied*, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981), quoting *A. B. Small Co. v. American Sugar Refining Co.*, 267 U.S. 233, 45 S.Ct. 295, 69 L.Ed. 589 (1925). Other statutes which have been struck down as unconstitutionally vague have contained ambiguous standards which are subject to more than one interpretation, *see Cotton States, supra; Exxon Corp, supra*. Ambiguity would represent an improvement in this Act. Although the utter lack of guidelines does not represent an "ambiguous" statute, this cannot be an acceptable answer to the charge of constitutional vagueness.

Finally, the process outlined in this provision of the Minus Act is arbitrary and capricious. The Fourteenth Amendment certainly allows government regulation in areas affecting public welfare, but the Constitution demands that the governmental goals "shall be accomplished by methods consistent with due process. And the guaranty of due process ... demands only that the law shall not be unreasonable, arbitrary and capricious and that the means selected shall have some real and substantial relationship to the object sought to be obtained...." *Nebbia v. New York*, 291 U.S. 502, 525, 54 S.Ct. 505, 510–11, 78 L.Ed. 940 (1934).

The Supreme Court has consistently struck down arbitrary government actions as violative of the due process clause of the Fourteenth Amendment. In *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), Justice Black wrote for the Court that the New Mexico board of bar examiners could not exclude a lawyer for not having "good moral character" unless there is some basis for finding that an applicant fails to meet standards which are rationally related to the practice of law. He reasoned that a state could not exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the due process of equal protection clauses of the Constitution. Nevertheless, *Schware* at least provided the nebulous standard of "good moral character" to guide hopeful applicants to the New Mexico bar. In the case at bar, the Minus Act provides no standards, nebulous or otherwise. This Court finds that the fair application of stated standards with a rational connection to a legitimate state goal are absent in this case. Under *Schware*, this provision of the Act also contravenes the due process clause of the Fourteenth Amendment.

Based on the foregoing, this Court finds unconstitutional the provision which requires a standardless legislative approval prior to the establishment of a hazardous waste facility.

B. *Challenge to Provision Allowing Industries to have On Site Storage and Treatment Facilities*

■ BFI also maintains that this statute violates the Fourteenth Amendment's constitutional guarantee of equal protection as well as the Commerce Clause because the Minus Act excludes industries which conduct on site treatment, storage, and disposal of their own hazardous wastes from the requirement of securing legislative approval. As in a due process challenge, an equal protection challenge of a commercial regulatory statute is accorded minimum scrutiny; *see Cotton States, supra* at 669, citing *Cloverleaf Creamery* [*Co. v. Davis*, 97 F.Supp. 121 (D.C.Ala.1951)], *supra*. Only a "wholly arbitrary act" falls before an equal protection challenge to an economic regulatory statute, *see New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976); *Cotton States, supra*, at 669.

■ In this case ADEM maintains that the difference in the requirement for approval is justified on the ground that facilities devoted solely to the storage of hazardous waste contain much greater volumes of

toxic substances and thereby pose a much greater hazard to the community than industries which simply store their own toxic waste. This rationale more than satisfies the minimum scrutiny test under [*State of*] *Minnesota v. Cloverleaf* [*Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981)] and is not a "wholly arbitrary act." Therefore, the Court finds that the provision which allows on site storage does not violate the equal protection clause.

■ The plaintiff also argues that the Minus Act violates the Commerce Clause of the Constitution. In *Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978), the Supreme Court held that the Commerce Clause does not allow a state to exclude all out-of-state toxic waste from in-state storage. BFI maintains that this holding should invalidate the Minus Act's distinction between on-site and off-site storage facilities. BFI is certainly correct in its argument that the Commerce Clause of the Constitution prevents states from practicing patent discrimination against out-of-state trade, *see Philadelphia, supra,* at 624, 98 S.Ct. at 2535–36. However, this Court finds that this provision of the Minus Act does not constitute such discrimination. As has been earlier noted, the difference in volume provides the Alabama Legislature with sufficient justification to distinguish between on-site and off-site hazardous waste facilities. Moreover, the Minus Act prevents in-state and out-of-state businesses alike from storing waste in an off-site facility. There is no such preference for in-state businesses over out-of-state businesses as was found fatal to the New Jersey legislation. The plaintiff urges this Court to hold that on-site and off-site hazardous waste facilities should be subject to precisely the same standards. The Constitution does not command such a result.

## CONCLUSION

The Court emphasizes that the Constitution does not foreclose legislative restrictions on hazardous waste facilities. Such restrictions appear to this Court to be essential for the protection of the health and safety of Alabama citizens. Storage of toxic waste is properly the subject of intense public concern. This Court only holds that the Legislature must announce some reasonable standards which will guide its deliberations or the deliberations of an appropriate agency such as ADEM in determining which applicants are approved, and these standards must bear at least some rational relationship to a legitimate state purpose. The statutes authorizing ADEM to grant or withhold a license presumably have such standards, but the utterly standardless provision of the Minus Act does not, and is thus in violation of our Constitution.

A separate judgment will be entered in conformity with this memorandum opinion.

## JUDGMENT

In accordance with the attached memorandum opinion, this Court hereby declares invalid the Minus Act provision which states: "No commercial hazardous waste treatment or disposal site not in existence on or before November 19, 1980, shall be situated without resolution [of the Legislature] giving approval therefor." This provision violates the Due Process Clause of the Constitution. Defendants are DIRECTED to proceed with the licensing process without regard to the Minus Act.

Defendants and/or their agents, employees, servants or any persons acting in concert with them, as well as their successors in office, are enjoined from considering the quoted provision of the Minus Act in making their determination of whether to issue a permit to BFI or any other persons to construct and operate commercial hazardous waste treatment facilities or disposal sites.

The Clerk of this Court is DIRECTED to serve a copy of this Memorandum Opinion and Judgment upon the Attorney General for the State of Alabama.

Court costs incurred in this proceeding are taxed against defendants.