**Albert JONES, Plaintiff,**

v.

**The AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Defendant.**

**No. 1:88–CV–03–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 2, 1988.

David E. Tuszynski, Nickerson & Tuszynski, Atlanta, Ga., for plaintiff.

William Lewis Spearman, Spearman & Gaughen, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

Pursuant to the Georgia Motor Vehicle Accident Reparations Act, O.C.G.A. § 33–34–1 *et seq*, plaintiff brings this action to recover lost wage benefits from the defendant. Plaintiff claims that defendant failed to pay him within the statutorily required time period for his loss of earnings resulting from an automobile accident on April 24, 1986. Currently before the court are several motions by the defendant. First, defendant files a motion in limine, requesting the court to exclude any evidence of transactions between the defendant and third parties unaffiliated with this action. Second, plaintiff files a motion in limine or, in the alternative, a motion for summary judgment, asking the court to hold O.C.G.A. § 33–34–6 unconstitutional. Finally, defendant brings a motion in limine or, in the alternative, for summary judgment asking the court to determine the statutory cap on recoverable lost earnings under O.C.G.A. 33–34–4(a)(2)(B). For the reasons stated below, the court GRANTS the motion in limine to exclude evidence of unrelated transactions, DENIES the motion to declare the statute unconstitutional or to grant summary judgment, and GRANTS the motion in limine to construe O.C.G.A. § 33–34–4(a)(2)(b) as limiting recoverable lost earnings to $200 per week.

## FACTS

On April 24, 1986, plaintiff Albert Jones while stopped in his pick-up truck at a red light, was struck from behind by another vehicle. As a result of this collision, Mr. Jones suffered injuries to his head, neck and back. Mr. Jones had basic No–Fault/Personal Injury Protection (PIP) insurance supplied by defendant. Pretrial Order, Attachment "E".

Mr. Jones received treatment for his injuries from Dr. Roger Curry, a chiropractor. Defendant reimbursed plaintiff for $1704.00 in medical expenses. Reimbursement of medical benefits is therefore not an issue in this lawsuit. *Id.*

Mr. Jones, who worked as a laborer with the City of Atlanta Water Bureau, claims that he could not work between April 24, 1986 and July 29, 1986. He also claims that defendant must pay him eight-five percent of the wages he lost during his period of disability at a rate of $200 per week. Thus, plaintiff contends that he should have continued receiving payments of $200 per week even after he returned to work until he had received eighty-five percent of his lost earnings, or until the $5,000 limitation on aggregate benefits was met.

Defendant has already paid the plaintiff lost wages or lost income benefits from April 25, 1986 through July 4, 1986 at a rate of $200 per week. *Id.* Defendant contends that plaintiff could have returned to work on July 4, 1986 because he was not disabled between July 4, 1986 and July 29, 1986. Defendant also contends that it only need pay plaintiff at the rate of $200 per week for the time period between the date of the accident and the date on which plaintiff was fit to work. Thus, plaintiff sees the $200 as a rate of payment, while defendant sees it as a cap on the amount recoverable.

DISCUSSION

I. *Motion In Limine To Exclude Certain Evidence*

Defendant has filed a motion in limine, requesting the court to exclude evidence of transactions between defendant and other parties insured by defendant. Plaintiff wants to admit evidence of transactions between defendant and other parties insured by defendant to demonstrate that defendant has previously acted in bad faith in denying its policy-holders' claims for reimbursement. Plaintiff contends that this evidence is admissible as an exception to the general rule excluding evidence of prior "bad acts" of a defendant under F.R.E. 403.

As a general rule, relevant evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or considerations of undue delay or waste of time. F.R.E. 403. The trial court entertains broad discretion is making determina-

tions of admissibility. *See, United States v. Bloom*, 538 F.2d 704 (5th Cir.1976). Plaintiff seeks to admit evidence of defendant's dealings with other claimants in order to rebut defendant's claim of good faith in its dealings with plaintiff. Evidence of wrongs, other crimes or acts are not admissible to prove the character of a defendant in order to show action in conformity therewith. F.R.E. 404(b). However, such evidence may be admissible to show motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake. Plaintiff argues that evidence of defendant's dealings with other claimants should be admitted to show a motive for its bad faith dealings with plaintiff.

■ The court agrees with the defendant that admitting the requested evidence would cause undue prejudice to defendant and cause undue delay in trial proceedings. Defendant, by its nature of business, necessarily is involved in a number of disputes. The court would be opening up a Pandora's box if plaintiff were allowed to introduce evidence of any transactions between defendant and its many policy-holders. Furthermore, in a case such as this where plaintiff does not carry the burden proving bad faith, the argument is weaker for admitting the requested evidence. The court therefore GRANTS defendant's motion in limine to exclude evidence of transactions between defendant and other claimants.

II. *The Constitutional Claims*

Defendant brings a second motion in limine or in the alternative for summary judgment claiming that O.C.G.A. § 33-34-6(c) is unconstitutional. Defendant would have this court find O.C.G.A. unconstitutional on the following grounds.

1. The statute violates the Eighth Amendment to the United States Constitution and Article I, Section I, Paragraph XVII of the 1983 Constitution of the State of Georgia.

2. The statute violates the due process clause of the Fourteenth Amendment to the United States Constitution and Arti-

cle I, Section I, Paragraph I of the 1983 Constitution of the State of Georgia.

3. The statute violates the equal protection clause of the Fourteenth Amendment to the United States Constitution and Article I, Section I, Paragraph II of the 1983 Constitution of the State of Georgia.

4. The statute violates the separation of powers clause, Article I, Section II, Paragraph III of the Constitution of the State of Georgia.

The court considers each of these arguments in turn.

A. Excessive Fines Clause Claims

First, the defendant claims that O.C.G.A. § 33–34–6(c) allows punitive damages in violation of the Eighth Amendment and the excessive fines clause of the Georgia Constitution. The defendant relies almost exclusively for its support on *Colonial Pipeline Co. v. Brown et al.*, 258 Ga. 115, 365 S.E.2d 827 (1988).

In *Colonial Pipeline*, the Georgia Supreme Court held that "the excessive fines clause of Art. I, Sec I, Par. XVII of the Georgia Constitution applies to the imposition of punitive damages in civil cases because, "the purpose of the deprivation is among those ordinarily associated with punishment, such as retribution, rehabilitation, or deterrence ..." *Colonial Pipeline*, 258 Ga. at 120, 365 S.E.2d 827. The statute at issue in *Colonial Pipeline* was O.C.G.A. § 51–12–5, which allows an assessment of punitive damages for tortious conduct.

This court, in keeping with "our federalism," is respectful of the Georgia Supreme Court's interpretation of the Georgia Constitution. However, defendant in the case at hand would have this court hold that O.C.G.A. § 33–34–6(c) is facially unconstitutional based on the Georgia Supreme Court's decision in *Colonial Pipeline*, 258 Ga. at 115, 365 S.E.2d 827. For this court to make such a ruling without first giving the Georgia Supreme Court a chance to consider the statute in light of *Colonial Pipeline* would be improper. Thus, for prudential reasons, this court will not decide whether the *Colonial Pipeline* decision extends to the Georgia Motor Vehicles Reparations Act. This court declines to hold O.C.G.A. § 33–34–6(c) facially unconstitutional.

■ Furthermore, the case at hand has yet to be tried. Thus, no punitive damages have yet been imposed on the defendant. The issue of whether defendant has been subject to excessive fines in violation of the Georgia Constitution is therefore not ripe. In *Colonial Pipeline*, the court held the punitive damages award excessive and violative of the Georgia Constitution on review of a $5,000,000 punitive damage award. *Colonial Pipeline*, 258 Ga. at 115, 365 S.E.2d 827. In contrast, defendant in the case at hand requests this court to hold O.C.G.A. § 33–34–6(c) unconstitutional on its face. This court declines to make such a drastic ruling, since to do so is neither prudent nor necessary at this time.

It is clear, however, that the Eleventh Circuit has held that O.C.G.A. § 33–34–6(c) is not violative of the Eighth Amendment to the United States Constitution. *Cotton States Mutual Insurance Co. v. Anderson*, 749 F.2d 663 (11th Cir.1984). In keeping with clear precedent this court declines to hold O.C.G.A. § 33–34–6(c) violative of the Eighth Amendment.

B. The Due Process Clause Claims

■ Defendant's second challenge to the constitutionality of O.C.G.A. § 33–34–6(c) is based on the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, Section I, Paragraph I of the 1983 Georgia Constitution. Defendant claims that the statute is unconstitutional because of the "total and complete absence of any limit, standard, guide, or measure from the legislature as to the severity of the breach of conduct which the statute seeks to regulate." Defendant's Brief in Support of Motion in Limine, p.p. 10–11.

The Georgia Supreme Court has already determined that O.C.G.A. § 33–34–6 does not deny due process. *Atlanta Casualty Co., v. Jones*, 247 Ga. 238, 241–242, 275 S.E.2d 328 (1981). The Eleventh Circuit recently adopted the view of the Georgia Supreme Court on this issue in *Cotton*

*States Mutual Insurance Co. v. Anderson,* 749 F.2d 663 (11th Cir.1984). Arguing that punitive damages are properly classified as criminal penalties or fines, defendant contends that this court should require stricter guidelines for the imposition of criminal penalties than for civil penalties. Since the Georgia Supreme Court has not yet found that O.C.G.A. § 33–34–6 provides criminal rather than civil penalties, this court need not address what requirements a criminal penalty would have to meet to withstand due process challenges. In keeping with the clear precedent established in *Cotton States Mutual Insurance Co. v. Anderson,* this court holds that O.C.G.A. § 33–34–6(c) neither violates the due process clause of the Fourteenth Amendment nor the parallel provision in the Georgia Constitution.

C. The Equal Protection Clause Claims

Defendant argues next that the statute deprives it of equal protection of the laws. Defendant submits that the "equal protection of the laws provisions of the Constitutions are violated because no burden of proof and no standard of evidence must be presented against the Defendant in this case in order to have punitive damages assessed." Brief in Support of Motion in Limine, p. 21.

Once again, defendant's argument is without merit. The Eleventh Circuit has determined that "the penalty provisions built into the No–Fault Act clearly bear a rational relationship to the legislature's dual purpose of encouraging prompt payment and avoiding litigation over no-fault claims ... the No–Fault Act passes constitutional muster on equal protection grounds." *Cotton States Mutual Insurance Co.,* 749 F.2d at 669. This court therefore reject defendant's equal protection clause challenge to O.C.G.A. § 33–34–6(c).

D. Separation of Powers Claim

Defendant's final constitutional argument is that the statute violates the separation of powers provision of the Georgia Constitution by requiring the judiciary to perform the essentially legislative function of defining the amount of punitive dam-ages awards. The court finds that this argument lacks merit. The defendant has failed to cite any real authority for this argument. Accordingly, the court rejects defendant's claim that O.C.G.A. § 33–34–6(c) violates the Georgia Constitution.

### III. *Loss of Earnings Benefits Under O.C.G.A. § 33–34–4*

Defendant has filed a motion in limine or, in the alternative, a motion for summary judgment requesting that the court construe O.C.G.A. § 33–34–4 as limiting recovery for loss of earnings or income to $200 per week.

O.C.G.A. § 33–34–4 requires owners of automobiles to carry insurance providing compensation to insured injured persons without regard to fault up to an aggregate minimum limit of $5,000 per insured. The statute provides further that all necessary medical expenses up to $2,500 are covered. § 33–34–4(a)(2)(B) allows recovery for "Eighty-five percent of the loss of income or earnings during disability with a maximum benefit of $200 per week."

The parties disagree on the meaning of O.C.G.A. § 33–34–4(a)(2)(B). Defendant argues that this section limits recovery of loss of earnings to $200 per week. Plaintiff contends, however, that the statute intends to provide the injured insured with eighty-five percent of his loss or earnings, payable at the rate of $200 per week. Thus, plaintiff contends that even after an insured injured person returns to work, the insurer should continue paying him loss of earning benefits until he has recovered eighty-five percent of his loss of earnings.

Applying this argument to the facts of the case at hand, plaintiff argues that he is entitled to $267.03 (eighty-five percent of his weekly salary) multiplied by his thirteen weeks plus three days of disability for a total award of $3,631.57. Plaintiff argues that defendant should pay this amount at a rate of $200 per week until plaintiff has received the full eighty-five percent of his lost earnings or until the $5,000 cap is met. In contrast, defendant

contends that plaintiff is only entitled to $200 per week multiplied by the number of weeks of disability.

The plain language of the statute favors defendant's reading of the statute. The statute states that a claimant shall receive eighty-five percent of his lost earnings "with a maximum benefit of $200 per week." O.C.G.A. § 33-3-4(a)(2)(B). It nowhere indicates that the $200 provision is to operate as the rate of payment.

Plaintiff does not provide any authority for reading the statute as fixing a rate of payment rather than a cap on the amount of payment. Plaintiff quotes extensively from *Glover v. Grogan*, 162 Ga.App 768, 292 S.E.2d 465 (1982) to support his argument. However, *Glover* does not support plaintiff's contention. *Glover* stands for the proposition that O.C.G.A. § 33-34-4(a)(2)(B) loss of income or earning benefits can exceed $2,500 if, when added to benefits received for medical expenses, the total is still less than $5,000. *Glover* did not even address the issue of whether § 33-34-4 set a rate of payment. In *Glover*, the court stated that there is no limitation on the number of weeks for which a claimant could collect loss of earning benefits. The only limitation is the $5,000 limitation on aggregate benefits. *Glover*, 162 Ga.App. at 772-773, 292 S.E.2d 465. This court agrees that there is no inherent limit (aside from the $5,000 aggregate limit) on the number of weeks for which an injured insured can collect benefits. Thus whether a person were injured for five for twenty-five weeks, he could still recover up to $200 per week until he reached the aggregate limitation on benefits of $5,000. *Glover* is not inconsistent in any way with defendant's construction of the statute. However, *Glover* does not support the plaintiff's contention that an insurer must continue paying benefits to an insured, even after the insured has returned to work, until the insurer has paid off eighty-five percent of the loss of earnings.

Plaintiff also raises a policy argument in support of his interpretation of § 33-34-4. Plaintiff contends that it would violate equal protection for an insurer to make the same weekly payments to an insured who earns $300 per week and an insured who earns $3,000 per week. The plaintiff would read the statute to provide each insured with eighty-five percent of their lost earnings. Yet surely the policy of O.C.G.A. § 33-34-1 *et seq* is to provide all persons with some minimal insurance. Nothing prevents an individual from purchasing additional coverage, if he feels $200 per week is insufficient. O.C.G.A. § 33-34-4 merely provides a starting point. Thus, all people get up to eighty-five percent of their lost earnings, but no more than $200 per week. If there were an equal protection argument to be raised, surely it would cut in exactly the opposite way. Why should a person who pays the minimal premiums for basic no-fault coverage be awarded far greater benefits than another simply because the former's salary is larger?

The court agrees with the defendant that O.C.G.A. § 33-34-4 merely requires the insurer to pay $200 per week to injured insureds throughout the period in which they are disabled, or until the $5,000 limitation on aggregate benefits is met. Accordingly, the court GRANTS defendant's motion in limine to construe O.C.G.A. § 33-34-4(a)(2)(B) as setting a cap of $200 per week on reimbursements for loss of income or earnings.

CONCLUSION

The court GRANTS defendant's motion in limine to exclude evidence of transactions between defendants and third parties who are unrelated to this action. The court DENIES defendant's motion in limine, or in the alternative, for summary judgment for a ruling on the constitutionality of O.C.G.A. § 33-34-6. The court GRANTS defendant's motion in limine to construe O.C.G.A. § 33-34-4 as setting a cap of $200 per week on loss of earning or income benefits.

So ORDERED.