41550. DORAN v. TRAVELERS INDEMNITY COMPANY.
(326 SE2d 221)

GREGORY, Justice.

Dennis Doran (Doran) filed suit against Travelers Indemnity Company (Travelers) in Clinch Superior Court. Travelers removed the case to the United States District Court for the Southern District of Georgia. Summary judgment for Travelers was granted by the District Court and Doran appealed to the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit concluded the case presented important issues of Georgia law, determinative of the cause, but without precedent in the decisions of this court. Four certified questions have been presented pursuant to our Rule 37. These questions relate to the Georgia Motor Vehicle Accident Reparations Act (commonly known as the No-fault Automobile Insurance Act, OCGA § 33-34-1 et seq., or simply "no-fault").

The facts have been carefully and completely stated by the Eleventh Circuit. We quote in part and paraphrase in part:

"(Doran), a Georgia resident, brought this action against (Travelers), which is authorized to do business in Georgia, to recover benefits under the no-fault provisions of an automotive insurance policy issued to his employer. In 1974 the insured, James O'Quinn, a Florida resident doing business as O'Quinn Automotive Electrical, owned and operated an electrical repair shop principally located in Jacksonville, Florida. In November of that year, O'Quinn obtained an insurance policy with Travelers, through the company's local agent in Jacksonville, covering vehicles garaged in Jacksonville and used in the business.

"On October 29, 1979, O'Quinn opened a branch facility in Waycross, Georgia, and added at least one vehicle to the policy, a 1974 van. The van was garaged in Waycross and was used by Doran in connection with O'Quinn's business. Although the van was registered in Florida, the parties understood that it would be used primarily in O'Quinn's Georgia operations.

"In response to the addition of the Georgia vehicle, Travelers delivered to O'Quinn a Georgia endorsement for basic no-fault coverage. The record does not indicate whether the endorsement was delivered to the business address in Georgia or Florida or to the residence of O'Quinn in Florida. The endorsement stated, in part: Notwithstanding any of the other terms and conditions of the policy, the coverage afforded shall be at least as extensive as the minimum coverage required by the Georgia Motor Vehicle Accident Reparations Act. . . . The original policy contained a similar provision, entitled 'Out-of-State Extension of Coverage,' which purported to increase the policy's minimum coverage to match the requirements specified by another state's compulsory insurance laws: While covered auto is away from the state where it is licensed we [the 'insurer'] will: (a) increase this policy's liability limits to meet those specified by a compulsory or financial responsibility law in the jurisdiction where the covered auto is being used. (b) provide the minimum amounts and types of other coverages, such as 'No-fault,' required of out of state vehicles by the jurisdiction where the covered auto is being used. On December 6, 1979, Doran, while driving the van in Clinch County, Georgia, had a collision and suffered serious injuries. Because the accident arose in the course of his employment, Doran applied for and immediately began receiving workers' compensation benefits under his employer's workers' compensation policy with Travelers. On December 8, 1980, Doran presented claims to Travelers for uninsured motorist benefits and $5,000 in benefits under OCGA §§ 33-34-1 and 33-34-3(A) (2) for basic no-fault coverage, also known as personal injury protection (PIP). Because under Georgia law an insurer must provide uninsured motorist protection on all insured vehicles garaged in Georgia, Travelers promptly paid the uninsured motorist part of Doran's claim. On January 30, 1981, however, it refused to pay the basic PIP benefits because Doran was already receiving payments under O'Quinn's workers' compensation policy. The company relied upon the September 19, 1980, Georgia Court of Appeals' decision in *Boston Old Colony Ins. Co. v. Brown*, 155 Ga. App. 767, 272 SE2d 755 (1980), which held that an employee injured in an automobile accident could not collect no-fault benefits under his employer's automotive policy if he had received workers' compensation benefits from the same employer.

"On March 12, 1981, six weeks after Travelers refused to pay Doran's PIP claim, the Supreme Court of Georgia reversed the Court of Appeals' decision, *Brown v. Boston Old Colony Ins. Co.*, 247 Ga. 287, 275 SE2d 651 (1981), and held that an employee could collect a reduced amount of no-fault PIP benefits even if he had collected disability benefits under his employer's workers' compensation coverage. The court stated that an earlier opinion which the Court of Appeals had followed, *Freeman v. Ryder Truck Lines, Inc.*, 244 Ga. 80, 259

SE2d 36 (1979), was no longer applicable because it was decided under the Georgia Motor Vehicle Accident Reparations Act as it existed prior to an April 1979 amendment to section 33-34-8, which now provides that an employee may recover no-fault benefits reduced to a limited extent by the amount he collected as workers' compensation. Travelers thus refused payment of the basic PIP benefits after the statute had been amended but before the Supreme Court had reviewed the Court of Appeals' decision in *Boston Old Colony*.

"On April 8, 1982, more than one year after the Supreme Court's decision in *Boston Old Colony*, Doran renewed his claim for basic PIP. The company promptly paid the $5,000 on April 16, 1982. The record shows that although Travelers was aware of the Supreme Court's reversal at least within 'several months' of the decision, it never notified Doran of the change in the law. The company asserts that by the time it became aware of the decision, the file on Doran's claim had been 'closed out.' Doran maintains that Travelers' failure to pay his claim or notify him within thirty days of the Supreme Court decision constituted a bad faith refusal to pay a claim under OCGA § 33-34-6.

"In his April 1982 claim, the plaintiff also sought $45,000 additional PIP benefits under OCGA §§ 33-34-3(a) (2) and 33-34-5, pursuant to *Jones v. State Farm Mutual Automobile Ins. Co.*, 156 Ga. App. 230, 274 SE2d 623 (1980), *cert. dismissed*, 248 Ga. 46, 280 SE2d 837 (1981), which held that a policyholder may elect an additional $45,000 in PIP coverage at any time, even after the accident has occurred, unless the insurer can demonstrate that it provided the policyholder with an opportunity in writing to accept or reject the optional coverage. The parties agree that O'Quinn was afforded no such opportunity."

The Eleventh Circuit's statement of facts goes on to point out that *Jones*, supra, was later overruled by *Van Dyke v. Allstate Ins. Co.*, 164 Ga. App. 885 (300 SE2d 166) (1982), but its holding was reinstated by this court in *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983). The statement of facts then concludes:

"Doran brought this suit in the Superior Court of Clinch County, Georgia, and the defendant removed the case to federal district court. The complaint sought $45,000 in optional PIP benefits, and punitive damages, penalty and attorney's fees for bad faith delay in paying basic PIP benefits. The district court granted summary judgment for the defendant and Doran has appealed."

1. The first of the four questions is: "Did the Travelers act in good faith as a matter of law so as to avoid the sanctions of OCGA §

33-34-6,[1] when it relied upon *Boston Old Colony Ins. Co. v. Brown*, 155 Ga. App. 767 (272 SE2d 755) (1980), as a basis for refusing to pay basic no-fault insurance benefits, and, when that case was reversed six weeks after the refusal, it failed to review its files, pay the claim or notify the insured within thirty days of the refusal?" *Answer*: Yes.

We arrive at this answer by observing the evolution of Georgia law concerning the correlation of no-fault benefits and workers' compensation benefits. Travelers' refusal to pay basic PIP[2] was based on the contention such benefits were not payable where workers' compensation was paid. The beginning point is the original no-fault statute. Ga. L. 1974, pp. 113, 120. Section 9 provided that no-fault benefits should not be reduced or eliminated by workers' compensation benefits or other similar benefits.[3] This section was challenged in *Freeman v. Ryder Truck Lines, Inc.*, 244 Ga., supra. In that case, Freeman, an employee of Ryder was injured in Ryder's vehicle while on the job. Freeman claimed both no-fault and workers' compensation from Ryder, a self insurer. Ryder contended workers' compensation provided the exclusive benefits.[4] Freeman contended section 9, supra, required payment of both benefits. While Ryder put forth an equal protection challenge, this court declined to address the merits of that challenge. Instead, the two statutes were construed in a manner to give effect to both, and avoid the conflict. It was held that section 9 applied to Freeman's own no-fault policy covering him and his personal vehicle. He could recover no-fault benefits under his own policy notwithstanding receipt of workers' compensation from Ryder. However, Freeman could not recover no-fault benefits from Ryder because workers' compensation was the exclusive remedy against the employer.

In 1979 section 9 was amended to limit its effect. Ga. L. 1979, p. 594. Under the amendment there was a correlation of benefits where an employer provided, at his expense, benefits for both workers' compensation and no-fault. No-fault benefits were reduced or eliminated by the amount of medical payments and loss of income payments under workers' compensation. An employer did not have to pay both, but an employee was entitled to the maximum benefits of either.

---

[1] This section provides due dates for payment of benefits. A failure to pay when due, not in good faith, results in a 25% penalty, reasonable attorney fees and punitive damages.

[2] OCGA § 33-34-4 provides compensation to insured injured persons "up to an aggregate minimum limit of $5,000" without regard to fault.

[3] "The benefits payable under this Act shall not be reduced or eliminated by any workmen's compensation benefits, medical payments benefits or any other disability benefits, wage loss benefits or hospitalization benefits that the insured person is entitled to receive."

[4] OCGA § 34-9-11. "The rights and remedies granted to an employee by this chapter shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death. . . ."

Then came *Boston Old Colony Ins. Co v. Brown*, 155 Ga. App., supra, which failed to take the 1979 amendment into account and simply followed *Freeman* to hold that payment of workers' compensation by the employer completely barred a claim by an employee for no-fault benefits against the employer's insurer. We granted certiorari and reversed in *Brown v. Boston Old Colony Ins. Co.*, 247 Ga. 287 (275 SE2d 651) (1981), where we recognized the 1979 amendment had altered section 9. The payment of workers' compensation no longer necessarily eliminated no-fault benefits payable by an employer or its insurer: it merely reduced the amount.

The significant point to realize is Travelers, in this case, denied Doran's no-fault claim during the period after the Court of Appeals rendered its decision in *Boston Old Colony*, supra, but before we reversed that case on certiorari. The denial was in accord with the decision of the Court of Appeals and did not lack good faith. See *Government Employees Ins. Co. v. Mooney*, 250 Ga. 760 (300 SE2d 799) (1983).

Doran contends the foregoing does not complete the inquiry into the good faith question. He suggests a lack of good faith when Travelers failed to review its files following our decision in *Boston Old Colony*, supra. We hold otherwise. The circumstances are analogous to our decisions under the general statute governing penalties for bad faith refusals to pay insurance benefits after demand has been made. OCGA § 33-4-6. We have held that the demand which triggers penalties under that provision must be made at a time when the right to make demand exists or else there can be no bad-faith penalty. *Life Ins. Co of Ga. v. Burke*, 219 Ga. 214 (132 SE2d 737) (1963). Similarly, a claim must be made under no-fault insurance at a time when it is a valid claim in order to trigger the good-faith penalty provision. Under the Court of Appeals' decision in *Boston Old Colony* Doran's claim was not a valid claim. It is only reasonable to require that the claim should be renewed after it became valid on account of our reversal of *Boston Old Colony*. We note prompt payment was made when the claim was renewed. There is, as a matter of law, no lack of good faith under these circumstances.

2. The second question is: "Does the $45,000 optional Georgia no-fault insurance coverage imposed by OCGA § 33-34-5, as construed in *Flewellen v. Atlanta Casualty Co.*, 250 Ga. 709 (300 SE2d 673) (1983), apply to an insurance policy issued in Florida to a Florida resident covering a vehicle licensed in Florida that the parties understand will be used and garaged in Georgia?" *Answer*: No.

A brief chronological review of our no-fault law sheds light on this question. The original Act, Ga. L. 1974, p. 113, at 118, contained

section 5 (a),[5] which required all policies issued in Georgia to be in accordance with the requirements of the Act. Under this provision the Court of Appeals held the Act to mean that no-fault requirements did not apply to a policy issued in New York even though the insured vehicle was involved in a collision in Georgia. *Tamiami Trail Tours v. Bess*, 150 Ga. App. 632 (258 SE2d 200) (1979). That is, the statute applied only to policies issued in Georgia and not to policies issued in other states. Even before the decision in *Tamiami*, supra, the Act was amended to deal with certain policies issued in other states and in Canada. (This amendment did not apply to *Tamiami* because the facts of *Tamiami* pre-dated the amendment.) The amendment was aimed at insurers authorized to transact or transacting insurance in Georgia.[6] As to this category of insurers, it directed that they should include in policies issued in other states or Canadian provinces a provision "which provides at least the minimum coverage required under Section 3(b) of this Act (OCGA § 33-34-4 (a) (2)). . . ." if the insured is involved in a motor vehicle accident in Georgia. Ga. L. 1976, p. 1513. Section 3(b) is the basic PIP of $5,000. Thus, the original Act applied only to policies issued in Georgia. The amendment extended some requirements of the Act to some policies issued outside Georgia, but not all requirements of the Act to all policies issued outside Georgia. Only out-of-state policies issued to insureds later involved in auto accidents in Georgia by companies transacting or authorized to transact insurance here were affected. The requirement was that such policies provide minimum PIP coverage of $5,000. The amendment is quite clear in its requirement of *only* $5,000 minimum PIP coverage because it refers specifically to section 3(b) (OCGA § 33-34-4 (a) (2)) and does not refer to the optional coverages ($45,000) found in section 4 (OCGA § 33-34-5).

It is where the policy was issued, and not where the vehicle was licensed or garaged, which *is a factor used to determine whether all*

[5] "Section 5 . . . (a) All policies of motor vehicle liability insurance issued in this State must be in accordance with the requirements of this Act, and no insurer shall issue a policy of motor vehicle liability insurance in this State that does not contain at least the minimum coverages required under this Act."

[6] "All insurers authorized to transact or transacting insurance in this State, or controlling or controlled by or under common control by or with an insurer authorized to transact or transacting insurance in this State which issue policies or contracts providing motor vehicle liability insurance coverage, or any other similar coverage, in any State or Canadian province shall include in such policies or contracts of insurance a provision which provides at least the minimum coverage required under Section 3(b) [OCGA § 33-34-4 (a) (2)] of this Act with respect to motorists insured under such policies or contracts who are involved in motor vehicle accidents in this State, and notwithstanding any provisions of any such policies or contracts to the contrary all such policies or contracts of insurance shall be deemed to satisfy the minimum requirements of this Act if a motorist insured under such policies or contracts of insurance is involved in a motor vehicle accident in this State." Ga. L. 1976, p. 1513, at 1514.

provisions of the no-fault act apply or only limited portions of the act apply.

3. The third question certified is: "If the answer to Question 2 is no, is the guarantee of equal protection of the laws, Ga. Constitution Art. I, Sec. 1, Para. 2, violated by the denial of the $45,000 optional no-fault coverage, otherwise available under *Flewellen,* supra, to a Georgia resident who was injured in the course of his employment in Georgia while operating a vehicle licensed in Florida and insured under a policy issued in Florida to a Florida resident, but that the parties understood would be used and garaged in Georgia?" *Answer:* No.

In the absence of any showing that the classification between Georgia residents insured under out-of-state policies as opposed to those insured under in-state policies creates a suspect class or infringes upon fundamental rights, *Shapiro v. Thompson,* 394 U. S. 618 (89 SC 1322, 22 LE2d 600) (1969), or otherwise requires heightened scrutiny, *Parham v. Hughes,* 441 U. S. 347 (99 SC 1742, 60 LE2d 269) (1979), we apply the rule adopted in *Wilder v. State,* 232 Ga. 404, 405 (207 SE2d 38) (1974):[7] "If the legislative purpose is legitimate and the classification drawn has some reasonable relation to furthering that purpose, the classification passes muster." Here the statutory scheme requires owners of vehicles registered in Georgia to provide certain minimum coverages. OCGA § 33-34-4 (a). It requires insurers who issue insurance policies in Georgia to conform those policies to the requirements of the no-fault law including optional coverages. OCGA § 33-34-3 (a) (1). Requirements relating to optional coverages are specific and require careful administration. *Flewellen v. Atlanta Cas. Co.,* 250 Ga., supra. To relieve insurers issuing out-of-state policies from the special administrative burden of optional coverage is a legitimate legislative purpose, and the classification bears a reasonable relation to furthering that purpose. Thus, there is no equal protection violation.

4. The fourth question is: "Under Georgia choice of law rules, does Florida law, which does not provide optional PIP coverage, or Georgia law govern the rights of an injured Georgia resident under an

---

[7] We observe that the 1983 Constitution altered the wording of the equal protection provision. In prior constitutions the language was, "Protection to person and property is the paramount duty of government and shall be impartial and complete." 1976 Constitution, Art. I, Sec. II, Par. III; 1945 Constitution, Art. I, Sec. II, Par. II. But now we have, "Protection to person and property is the paramount duty of government and shall be impartial and complete. *No person shall be denied the equal protection of the laws.*" (Italicized sentence added.) 1983 Constitution, Art. I, Sec. I, Par. II. As it relates to this case and our application of the principle of equal protection, no change has been wrought. We would apply the same principle under all three constitutions making it unnecessary to determine which constitution applies to the facts in this case.

insurance policy issued to a Florida resident in Florida and covering a vehicle licensed in Florida that the parties understand will be used and garaged in Georgia?" *Answer*: Our answer to the second question demonstrates that Georgia law does not provide optional PIP under the facts of this case. It is unnecessary to answer this fourth question.

*Certified questions answered as indicated herein. All the Justices concur, except Smith, J., who dissents as to Divisions 1 and 2.*

DECIDED FEBRUARY 27, 1985 —
REHEARING DENIED MARCH 14, 1985.

*Sutton & Reddick, Berrien L. Sutton, Charles R. Reddick,* for appellant.

*Dickins & Irvin, Bryan F. Dorsey,* for appellee.