72267. INTERNATIONAL INDEMNITY COMPANY
v. COACHMAN.
(351 SE2d 224)

CARLEY, Judge.

In August of 1981, appellee resided in the household of his grandmother, Mrs. Willie Mae Rambo. Mrs. Rambo owned a vehicle which was insured by appellant-defendant International Indemnity Company. She had applied for this policy with appellant in 1980. The application form presented for Mrs. Rambo's submission in 1980 did not comply with the requirements of former OCGA § 33-34-5 (b), as that statutory provision was subsequently construed in *Jones v. State Farm &c. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623) (1980) and *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983). However, in apparent reliance upon former OCGA § 33-34-5 (c), appellant had in 1981 mailed to Mrs. Rambo written notification of its offer to provide optional no-fault PIP coverages under her policy. No timely response to this notification had been forthcoming from Mrs. Rambo.

On August 24, 1981, appellee-plaintiff was seriously injured in the wreck of an automobile that was owned by another. He received $5,000 in basic no-fault PIP benefits under the automobile owner's policy. On March 9, 1982, a demand letter was sent to appellant by an

attorney who stated that he was the legal representative of both appellee and Mrs. Rambo. This letter expressed his clients' "wish to accept the statutory continuing offer of optional benefits and . . . [the] elect[ion of] the maximum optional personal injury protection benefits of $50,000.00." Counsel's letter further requested that appellant "[p]lease let us know as soon as possible the exact amounts which *the named insured* would have been required to pay in the referenced time period or time periods to obtain such benefits, and we will immediately remit said sums to you. *Please accept this as our unconditional tender* of such sums. We await only your specification of the amount due to place the cash in your hands." (Emphasis supplied.) Appellant's response to this demand letter did include the information that the "additional coverage *would have* cost $150.00." (Emphasis supplied.) However, appellant unequivocally stated that it was denying appellee's claim for maximum optional no-fault PIP benefits on the basis that Mrs. Rambo had been offered but had rejected that coverage. As the result of this unequivocal denial of any coverage, Mrs. Rambo did not undertake to effect an actual tender of $150 to appellant.

In October of 1982, appellee filed the instant action against appellant, seeking to recover maximum optional no-fault benefits, a 25% penalty and attorney fees, and punitive damages. Appellant answered and asserted, among its other defenses, the applicability of former OCGA § 33-34-5 (c) as a bar to appellee's recovery under Mrs. Rambo's policy. During the pre-trial stage of the instant case, this court issued an opinion, the effect of which was to uphold the viability of appellant's former OCGA § 33-34-5 (c) defense in such circumstances as existed in the instant case. See *International Indem. Co. v. Enfinger,* 170 Ga. App. 443 (317 SE2d 841) (1984). That decision was, however, reversed by our Supreme Court. "We hold [former OCGA § 33-34-5 (c)] was intended to apply to policies in existence on March 1, 1975 and not those which came into existence after that date." *Enfinger v. Intl. Indem. Co.,* 253 Ga. 185, 186 (317 SE2d 816) (1984). After the motion for rehearing in *Enfinger* was denied by our Supreme Court on July 25, 1984, an application for a writ of certiorari was filed with the Supreme Court of the United States. On November 13, 1984, that application was denied.

On December 18, 1984, appellee and appellant reached a partial settlement of the instant case. In consideration of the promise that Mrs. Rambo would subsequently tender $150 as additional premiums, appellant agreed to and did make a present $45,000 payment to appellee of optional no-fault benefits under Mrs. Rambo's policy. However, it was agreed that all remaining issues concerning appellee's entitlement to recover penalties, attorney fees, and punitive damages would be reserved for trial. These issues were tried before a jury and

a verdict in favor of appellee was returned. Judgment was entered on the verdict and appellant filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Appellant's motion was denied in its entirety. It is from that order of the trial court that appellant brings the instant appeal.

1. Among its 28 enumerations of error, appellant raises the general grounds and numerous evidentiary rulings that are tangentially related to the general grounds. It is those enumerations that will be addressed first.

Appellant's primary contention concerns the date that *Enfinger* became "final" for purposes of determining an insurer's compliance with OCGA § 33-34-6. Applying the rationale of *Cotton States Mut. Ins. Co. v. McFather*, 251 Ga. 739, 743 (3) (309 SE2d 799) (1983), appellee should have been paid benefits within 30/60 days of July 25, 1984, since that is the date our Supreme Court denied the motion for rehearing in *Enfinger* and thereby "finally" determined the non-viability of appellant's former OCGA § 33-34-5 (c) defense. According to appellant, however, *McFather* is inapplicable authority upon which to predicate a recovery by appellee of OCGA § 33-34-6 (c) punitive damages, since unlike *McFather*, the evidence in the instant case shows that an application for a writ of certiorari from our Supreme Court's *Enfinger* decision was filed with the Supreme Court of the United States. This, according to appellant, is sufficient proof that *Enfinger* could not have become "final" until disposition of the application for certiorari filed in the U. S. Supreme Court. See *Dorsey v. West*, 252 Ga. 92, 94 fn. 3 (311 SE2d 816) (1984). Appellee was paid the benefits within 60 days of November 13, 1984, the date that this application for federal certiorari was denied. Accordingly, the issue for resolution is whether the "finality" of *Enfinger* for purposes of determining appellant's liability for punitive damages is controlled by the *McFather* rationale or by the *Dorsey* rationale.

In *International Indem. Co. v. Terrell*, 178 Ga. App. 570, 573 (344 SE2d 239) (1986), this court applied the *Dorsey* rationale and held that the "failure to tender the optional no-fault benefits until final disposition of *Enfinger*, which turned out to be denial of a writ of certiorari by the United States Supreme Court, was reasonable as a matter of law." However, the evidentiary posture of *Terrell* differs from that of the instant case. Apparently unlike *Terrell*, supra at 572-573, appellee in the instant case undertook to adduce such *additional* evidence for the jury's consideration as would "warrant . . . an inference that [appellant's] decision to petition for certiorari was a dilatory tactic. . . ." To this end, appellee produced, over appellant's objections, two witnesses who were shown to be attorneys and members of the bar of the Supreme Court of the United States and who were duly qualified as legal experts. These witnesses offered opinions that,

insofar as the record in *Enfinger* demonstrated that no "federal question" issue was ever raised until the motion for rehearing was filed, the Supreme Court of the United States lacked the requisite jurisdiction to review the decision rendered by our Supreme Court.

As to this jurisdictional issue which was not presented in *Terrell*, appellant offered nothing at trial which was specifically to the contrary. Moreover, appellant makes no compelling contention on appeal that the experts' testimony constituted an erroneous statement of the law as regards the federal statutory grant of jurisdiction applicable for securing the review of a state court decision by the Supreme Court of the United States. See generally 28 USCA § 1257; *Susquehanna Boom Co. v. West Branch Boom Co.*, 110 U. S. 57 (3 SC 438, 28 LE 69) (1884). By way of substantive opposition to the expert's testimony, appellant relied at trial, and relies on appeal, only on the general legal principle that a denial of certiorari should not be construed as the expression of an *opinion* by the *appellate court* on the *merits* of the decision. The validity of this legal principle is beyond dispute. We nonetheless do not construe it as necessarily foreclosing the pursuit of an otherwise relevant inquiry into the legal *sufficiency* of a *litigant's* invocation of an appellate court's statutory *jurisdiction*.

Having offered no substantive evidence in opposition, appellant enumerates the admission of the testimony of appellee's experts on several evidentiary grounds. With regard to relevance, it is clear that, by virtue of predicating its "good faith" refusal to pay upon the fact of the pending application for certiorari, appellant itself rendered expert testimony as to the underlying legal viability of that application potentially relevant and admissible evidence. See generally *Stewart v. State*, 246 Ga. 70, 75 (4a) (268 SE2d 906) (1980). We are aware of no authority for the proposition that the mere filing of an application for the grant of certiorari by the Supreme Court of the United States is irrebuttable evidence of an insurer's "good faith" and cannot be shown to be a possible dilatory tactic under the existing circumstances. The witnesses themselves gave no opinion as to the ultimate jury issue, which was whether the application for certiorari was sought in good or in bad faith. "The witness[es] merely gave [their] opinion[s] as to matters involved with the federal . . . law [regarding jurisdiction of the Supreme Court of the United States] and [their] testimony did not invade the province of the jury. [Cit.]" *Smith v. Varner*, 130 Ga. App. 484, 488 (5) (203 SE2d 717) (1973). Moreover, insofar as appellee successfully moved the trial court to grant a directed verdict on the relevant *legal* issue of jurisdiction, the evidence was clearly admissible. "While . . . the trial judge might have resorted to the [federal] statutes and the decisions of the Supreme Court of [the United States], we cannot say that it was error to receive the testimony of skilled attorneys who practiced in [that court],

to aid him in arriving at a proper conclusion as to what was the [applicable] law . . . , and especially as to the practice of [that court] in regard to appeals and their dismissal. The testimony was [ultimately] not for the jury, but for the information of the judge; and he was not bound by the opinions of these attorneys, but it was his duty at last to decide the law himself, aided by these opinions and by such other sources of information as were accessible to him." *Chattanooga &c. R. Co. v. Jackson*, 86 Ga. 676, 681 (3) (13 SE 109) (1890). Accordingly, there was no error in the admission of the expert testimony concerning an aspect of applicable federal law or, in the absence of any evidence to the contrary, in the trial court's grant of a directed verdict as to that legal issue. See also OCGA § 9-11-43 (c). Compare *Stewart v. State*, supra at 75 (4b).

It would appear that appellant perceives the instant case to be controlled by a determination of *Enfinger's* "finality" in the sense that that case was no longer pending in some stage of the appellate process. The relevant question, however, is at what point in the appellate process did *Enfinger* become "final" in the sense that an insurer could no longer rely upon former OCGA § 33-34-5 (c) to vindicate its "good faith" in denying entitlement to optional no-fault PIP benefits under *Jones* and *Flewellen* to those who were insured under policies issued subsequent to March 1, 1975. Under the evidence of record in the instant case, including the testimony of appellee's experts, we cannot say that a finding was demanded that appellant's failure or refusal to pay within 30/60 days of July 25, 1984 was in "good faith" as a matter of law or that a finding was not authorized to the effect that appellant's delay pending disposition of the application for the federal writ of certiorari in *Enfinger* was not merely a dilatory tactic. Notwithstanding that application for certiorari, there was additional evidence in the instant case that *Enfinger* became "final" for purposes of OCGA § 33-34-6 upon our Supreme Court's denial of the motion for rehearing, in that no *viable* avenue of further appellate recourse was reasonably available. Cf. *Cotton States Mut. Ins. Co. v. McFather*, supra. Compare *International Indem. Co. v. Terrell*, supra. Our holding in this regard might perhaps be different were an insurer other than appellant involved. However, the decision to apply for the writ of certiorari from the U. S. Supreme Court in *Enfinger* was one which was made by appellant in the instant case. Appellant is therefore presumed to have known of the applicable federal law relating to that application and, consequently, appellant is chargeable with knowledge of the reasonableness of the legal compliance or noncompliance of its application therewith. "The law presumes that every one knows the law. . . ." *Hughes v. State Bd. of Med. Examiners*, 162 Ga. 246, 250 (134 SE 42) (1926).

2. Appellant makes a further assertion in support of the general

grounds. "Although an insurance policy may provide for optional PIP benefits 'from its inception' under *Flewellen*, the insurer's obligation to pay those benefits does not arise until the insured/policyholder — as contrasted to an incidental 'insured' — demands the higher coverage and tenders his premium therefor." *Occidental Fire & Cas. Co. v. Buyce*, 173 Ga. App. 881, 882 (328 SE2d 574) (1985). Appellant urges that at no time prior to its payment of benefits to appellee in December of 1984 was appellee's claim ever supported by any demand for coverage and tender of premiums by Mrs. Rambo.

The uncontroverted evidence showed that, in March of 1982, a demand for maximum optional no-fault PIP coverage and benefits was sent to appellant in the form of a letter from counsel who represented *both* Mrs. Rambo, the insured/policyholder, *and* appellee, the injured incidental insured. Compare *Bailey v. Ga. Mut. Ins. Co.*, 168 Ga. App. 706 (309 SE2d 870) (1983). This letter made an unconditional offer to tender the additional premiums for such coverage immediately upon advisement of the amount owed "by the named insured." Although appellant's response to this demand letter did contain information regarding the amount that the additional coverage "would have cost," it unequivocally stated that appellee's claim was being denied on the basis of no existing coverage under Mrs. Rambo's policy. Under this uncontroverted evidence, the denial of coverage was tantamount to the denial of the offer of unconditional tender and it was not incumbent upon Mrs. Rambo to attempt to make an actual tender of the stated amount of additional premiums. See generally *Nickelson v. Owenby*, 208 Ga. 352 (2) (66 SE2d 828) (1951); *Williams v. Blanton*, 211 Ga. 491, 493 (2) (86 SE2d 504) (1955).

Appellant urges, however, that appellee had no *indisputable* claim to coverage in March of 1982 and that, when appellee was paid benefits in December of 1984, Mrs. Rambo had never formally *renewed* her demand and tender. However, in urging a renewal requirement, appellant does not occupy the same position as did the insurer in *Doran v. Travelers Indem. Co.*, 254 Ga. 63 (326 SE2d 221) (1985). Appellant makes no contention that a renewal was an *administrative* necessity after *Enfinger*, so as to *reapprise* it that appellee had made a preexisting but denied claim under Mrs. Rambo's policy. Appellee's *suit* had been *pending* against appellant since October of 1982. Thus, appellant was clearly in the position to know the effect that the holding in *Enfinger* would have on its legal liability for payment of appellee's *existing* claim. In *Doran v. Travelers Indem. Co.*, supra, the evidence showed that the insurer had denied the insured's *original* demand and claim and that the insurer's file had then been *closed*, which actions the insurer had based upon an appellate decision that was only subsequently reversed. Only after the reversal did the in-

sured in *Doran* renew his claim and, notwithstanding its prompt payment, he sought to recover for the insurer's lack of "good faith" in failing to use the reversal as the occasion for reviewing its files and sending benefits to those whose previous claims had been denied. For purposes of avoiding liability under OCGA § 33-34-6 in such circumstances, it is not incumbent upon the insurer to conduct an administrative review of its closed files to determine what effect the reversal might have on prior denied claims. To trigger the applicability of OCGA § 33-34-6 under such circumstances, "[i]t is only reasonable to require that the [insured's] claim should be *renewed* after it became valid on account of [the subsequent reversal]. . . ." (Emphasis supplied.) *Doran v. Travelers Indem. Co.*, supra at 67.

Accordingly, there was uncontroverted evidence in the instant case that an administratively complete and otherwise valid demand and tender for the extension of coverage under Mrs. Rambo's policy had been submitted to appellant in March of 1982, which demand, tender and claim had been denied only for lack of coverage. See generally *Hanover Ins. Co. v. Jennings*, 172 Ga. App. 559, 560 (2) (323 SE2d 863) (1984). Appellee "renewed" his claim based upon Mrs. Rambo's demand and tender by filing suit against appellant. Under this evidence, when appellant's final legal defense against payment of the benefits sought in appellee's suit was removed by our Supreme Court's decision in *Enfinger*, no formal renewal of that demand or claim was legally necessary in order to apprise appellant of its "good faith" obligation to pay those benefits being sought in appellee's pending action or risk violating the mandate of OCGA § 33-34-6. Compare *Doran v. Travelers Indem. Co.*, supra. Accordingly, the only jury issue was whether appellant had failed to pay those benefits sought in appellee's pending suit within the applicable time period and, if it had, whether that failure was in "good faith." That issue has been discussed in Division 1. There is no merit in this further assertion under the general grounds.

3. Error is enumerated as to the trial court's grant of a portion of appellee's motion in limine. The contention is that the ruling precluded appellant from adducing evidence concerning counsel's employment by Mrs. Rambo, which evidence would have been relevant to counsel's authority to act as the legal representative of the named insured under the policy.

Appellant's contention is not supported by the record. The motion in limine was addressed to such evidence as related to the contract of employment between counsel and appellee, *not* the contract of employment between counsel and Mrs. Rambo. There is nothing whatsoever to indicate that the trial court's grant of the pretrial motion in limine had the effect of precluding a subsequent inquiry into counsel's authority to act for Mrs. Rambo, were appellant to have as-

serted the existence of that authority as a relevant issue during the course of trial. Appellant makes no contention that the trial court's preclusion of inquiry into the terms of the contract of employment between counsel and appellee was erroneous. Accordingly, this enumeration has no merit.

4. It is urged that the trial court erred in excluding the introduction of evidence which was relevant to the ostensible "reasonableness" of appellant's former OCGA § 33-34-5 (c) defense at times prior to July 25, 1984.

The reasonableness of an insurer's reliance upon that defense at all times *prior* to our Supreme Court's denial of the motion for rehearing in *Enfinger* was a conceded issue in the instant case. See generally *Cotton States Mut. Ins. Co. v. McFather*, supra at 743 (3). The only "good faith" issue for resolution was the reasonableness of appellant's failure or refusal to pay benefits *after* the non-viability of that defense had been "finally" determined by our Supreme Court. Accordingly, the only relevant evidence would be that which related to the post-July 25, 1984 actions taken by appellant with regard to appellee's claim. As has been discussed in Division 1 of this opinion, the jury heard evidence in that regard and, as it was authorized to do, the jury determined that appellant's application to the U. S. Supreme Court for writ of certiorari in *Enfinger* did not represent such "good faith" as would justify its refusal to pay. Since the excluded evidence which is the subject of this enumeration had no relevancy to the issue of appellant's "good faith" under the circumstances, there was no error.

5. In a colloquy with the trial court concerning the introduction of certain evidence, counsel for appellant made the statement that his client had "won" the *Enfinger* case. The trial court's response to appellant's counsel was that his client "didn't win [*Enfinger*] in the Supreme Court of Georgia at that particular time in regard to mail-outs. [Appellant] lost it at that point in time." On appeal, appellant urges that the trial court's statement that the *Enfinger* case had been "lost" in our Supreme Court constituted an expression of opinion as to what had or had not been proved and was violative of OCGA § 9-10-7.

The trial court's statement was not violative of OCGA § 9-10-7. That appellant had "lost" *Enfinger* in our Supreme Court was a statement of fact. " 'When a fact is proved by undisputed evidence, it is never error for a trial judge to assume or intimate that the fact is proved. [Cits.]' [Cits.] 'It is not harmful error for the trial judge to express an opinion in accordance with what is demanded by the evidence and about which there is no controversy.' [Cit.]" *Rauch v. Shanahan*, 125 Ga. App. 782, 785 (189 SE2d 111) (1972).

6. The refusal of the trial court to afford appellant the right to make the opening and concluding argument to the jury is enumerated

as error. In this regard, appellant relies upon the fact that OCGA § 33-34-6 places the burden of proof as to "good faith" upon the insurer. "The right to open and conclude turns upon the question of evidence, that is, involves the question upon whom the burden of proof rests." *Hodsdon v. Whitworth*, 162 Ga. App. 793, 794 (1) (293 SE2d 70) (1982).

We note at the outset that whether the insurer is legally required to assume the burden of proof as to "good faith" under OCGA § 33-34-6 is itself ultimately dependent upon whether the insured has met his initial burden of proof as to the timely submission of a claim which demonstrates his entitlement to the benefits sought. See generally *Midland Ins. Co. v. West*, 175 Ga. App. 419 (333 SE2d 628) (1985); *Allstate Ins. Co. v. Torok*, 168 Ga. App. 517 (309 SE2d 676) (1983). Under the circumstances of the instant case, appellee's claim was not payable absent a demand for coverage and a tender of premiums by Mrs. Rambo and, as evidenced by our discussion in Division 2, appellant insisted on litigating that issue on the ground that a renewal demand and tender were necessary. See *Doran v. Travelers Indem. Co.*, supra. "So long as any portion of the burden remains with the plaintiff, it has not shifted to the defendant. [Cits.]" *Hodsdon v. Whitworth*, supra at 794 (1). Under these circumstances, it would appear that appellant was not entitled to claim the right to opening and closing argument. See generally *DuBignon v. Wright*, 122 Ga. 263 (50 SE 65) (1904).

However, even assuming that appellant may otherwise have been entitled to claim the right to opening and closing argument, the record clearly shows that appellant failed to assert its claim in a timely fashion. "The rule is that this right to open and conclude must be claimed before testimony by the other party is submitted." *Fisher v. Whitehurst*, 14 Ga. App. 218, 220 (80 SE 536) (1913). See also *Southern R. Co. v. Gresham*, 114 Ga. 183 (1) (39 SE 883) (1901); *Northington v. Granade*, 118 Ga. 584 (2) (45 SE 447) (1903); *Baird v. Hill*, 141 Ga. 15 (80 SE 281) (1913).

7. The trial court denied appellant's motion for a mistrial, which motion was based upon a statement made by appellee's counsel in closing argument. However, appellee's counsel withdrew the remark and the trial court instructed the jury to "put it out of your minds. . . ." Although the denial of the motion for mistrial is enumerated as error, "[u]nder all the facts of this case we are of the opinion that it cannot be properly held that the trial judge abused his discretion in overruling the motion for a mistrial, and that prejudice, if any, created by the argument upon which the motion was based was not completely erased by the actions taken by the trial judge." *McCluskey v. American Oil Co.*, 225 Ga. 63, 65 (165 SE2d 830) (1969).

In the guise of arguing this enumeration, appellant makes the

further assertion in its brief on appeal that, after the above incident, the trial court erroneously allowed appellee's counsel to make a somewhat similar prejudicial remark in his jury argument. However, only the trial court's denial of a mistrial with regard to the original remark is enumerated as error. The trial court's ruling with reference to the subsequent remark of appellee's counsel is not the subject of a separate enumeration of error and will not be considered.

8. The trial court's giving of certain of appellee's requests to charge is the subject of several of appellant's enumerations of error. All the contested charges and the reasons advanced for holding them to be erroneous have been carefully considered. For the most part, however, our previous resolution of the legal issues addressed in prior divisions of this opinion renders any extensive discussion of these enumerations unnecessary. None of the contested charges presents a meritorious ground for reversing the judgment.

9. The trial court's refusal to give certain of appellant's requests to charge is also the subject of several enumerations of error. Again, all such enumerations have been carefully considered but none presents a valid basis for reversal.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

### ON MOTION FOR REHEARING.

In its motion for rehearing, appellant urges that our opinion has the erroneous effect of allowing a lay jury to determine whether an appeal is frivolous and to assess punitive damages if it so finds. Appellant's contention in this regard evinces a misunderstanding of our holding. The issue in this case is not whether appellant misused its right as a losing litigant and invoked an appellate court's jurisdiction for the sole purpose of pursuing an appeal on frivolous grounds. The issue is whether appellant satisfied its responsibilities as a losing litigant and, by basing its failure or refusal to pay no-fault benefits on its pending efforts to secure discretionary appellate review by the Supreme Court of the United States, acted in "good faith" toward its insured within the meaning of OCGA § 33-34-6. The evidence in the instant case authorized a finding that, notwithstanding the relative merits of any federal question that was or might have been raised in appellant's application for the writ of certiorari, its status as a litigant in *Enfinger* was already at an end. The effect of appellant's failure to raise *any* federal question in a timely fashion was to render our Supreme Court's decision in *Enfinger* a jurisdictionally nonviable vehicle upon which to predicate any effort to secure an appellate review by the Supreme Court of the United States. Had there been no question but that a viable jurisdictional basis existed for appellant's application for the writ of certiorari, no jury question as to appellant's lack

of good faith pending final disposition of that application would have existed. To hold, as appellant suggests, that the mere existence of an application for a writ of certiorari from the Supreme Court of the United States is the controlling factor, notwithstanding an underlying lack of any jurisdictional support therefor, is to sanction the unwarranted indiscriminate employment of such applications by any and all parties who are dissatisfied with a state appellate court's otherwise "final" resolution of any and all issues. The appellate process does not extend to the Supreme Court of the United States in every case. The evidence in the instant case authorized a finding that, under the circumstances, the pendency of appellant's application for the writ of certiorari was not a "good faith" basis upon which to refuse or fail to pay appellee the no-fault benefits that were due him. The jury was accordingly authorized to assess punitive damages against appellant, not for having pursued a frivolous appeal, but pursuant to OCGA § 33-34-6 (c).

*Motion for rehearing denied.*

DECIDED NOVEMBER 6, 1986 —
REHEARING DENIED DECEMBER 2, 1986 — ■

*Michael L. Wetzel*, for appellant.
*James E. Butler, Jr., Sandra S. Laszlo*, for appellee.