74155. ALEXANDER UNDERWRITERS GENERAL AGENCY,
INC. et al. v. LOVETT et al.
(357 SE2d 258)

BIRDSONG, Chief Judge.

This is the second appearance of this case before this court. See *Alexander Underwriters Gen. Agency v. Lovett*, 177 Ga. App. 262 (339 SE2d 368). The facts relevant to this case are set forth in that opinion and will not be here repeated. The effect of the decision of this court in the earlier opinion was to establish coverage by International Indemnity Company for liability. In its remand this court concluded that a jury issue existed as to whether and to what extent the insurer could be held liable for damages over and above the $10,000 policy limits based on the insurer's failure to defend or adjust the claim against its insured, the Lovetts. We recognized in the opinion that there was evidence of record that on February 27, 1984, after the wrongful death action against the Lovetts had gone into default but before a trial on damages, the decedent's attorney wrote the insurer International Indemnity offering to settle for the $10,000 policy limits. We concluded that the insurer ignored this offer, choosing to rely on the position that the policy had been cancelled. We stated that a proper and safe course of action for an insurer in this position would have been to enter upon a defense under a reservation of rights and then proceed to seek a declaratory judgment in its favor. We also pointed out that where a person injured (Collins, the tort claimant) offers to settle for a sum within the policy limits, and the insurer refuses the offer of settlement, the insurer may be liable to the insured to pay any verdict rendered against the insured including a verdict which exceeds the policy limits of liability. *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 870 (1) (310 SE2d 513). Thus it is clear that upon remand a jury was to decide whether the insurer had refused in bad faith or negligently to defend or adjust the claim by Collins against its insured the Lovetts.

In the suit initiated by Collins on behalf of the decedent's minor child, suing for wrongful death against the tortfeasor Lovett (the suit which International Indemnity refused to defend), the child sued several defendants involved in the multiple car accident which caused

her father's death. Lovett appeared *pro se* but offered no defense and simply made an appearance. Each of the other defendants received a verdict but Lovett, being in default, suffered a jury verdict in the amount of $415,377 plus interest and costs.

Lovett then instituted this litigation against his insurer, International Indemnity, to recover his loss, i.e., the $415,377 plus penalties and attorney fees. It was the trial court's grant of summary judgment to Lovett on the issue of liability that resulted in the first appearance of this case before the court at 177 Ga. App. 262, supra.

Upon remand to determine the issue of damages, whether equal to or over and above the $10,000 policy limits, the jury returned the verdict in favor of Lovett in the amount of $415,377, $25,000 in punitive damages and $22,500 in attorney fees.

International Indemnity and its general agent, Alexander Underwriters General Agency, Inc. (defendants below) bring this appeal enumerating 27 asserted errors. *Held*:

1. Inasmuch as many of these enumerations may be consolidated, we will not consider the enumerations seriatim but will consolidate where possible. Parenthetically we note that Alexander is the administrative arm as well as the general agent of International Indemnity. Alexander accepts applications, prepares the policy and mails the policy and thereafter monitors the daily activities concerning policies and policyholders. However, International Indemnity maintains and controls the flow of cash and is the insurer.

In substance International Indemnity contends:

(a) The evidence was insufficient to show bad faith so as to justify an award beyond the contractual limits of the policy. It argues that the suit was long in default and could not realistically be reopened. It maintained it had a bona fide belief that the policy had been cancelled due to non-payment of premium, thus International Indemnity maintains that it in good faith concluded there was no coverage at the time of the accident and it was justified in maintaining this belief until the grant of summary judgment in this case established contractual liability.

(b) It maintains that *statutory* penalty provisions pertaining to bad faith manifested by a wrongful denial of coverage or defense applies only to the contractual limitations of the policy and not to an excess liability claim. Thus, International Indemnity claims that the insurer was entitled to a directed verdict on the entire complaint in excess of the $10,000 policy limit. It makes this contention on the basis that as soon as this court ruled in the first appearance of this case that liability attached and the contested issue of coverage was settled, International promptly paid the contractual limits of $10,000 plus interest into the registry of the court. It contends that this response to the determination of liability removed any issue of penalties

and attorney fees based on bad faith.

(c) International Indemnity argues that the rights of the tort claimant (Collins) and the insured (the Lovetts) are both governed by the express terms of the contract and the claim for damages based upon bad faith must be grounded upon an absolute denial of liability by the insurer or upon the refusal of the insurer to make a bona fide effort to effect a settlement of the claim rather than upon the failure of the insurer to pay the claim. Having paid the $10,000 plus interest into the registry of the court shows, International Indemnity contends, there was no absolute denial of liability and it did constitute an attempted settlement of the claim.

(d) It also contends that penalties for bad faith are not authorized where the insurer has any reasonable ground to contest the claim and there is a disputed question of fact. International Indemnity maintains it had a bona fide and legal right to deny liability because all of their records show that Lovett was not one of their insureds. Bad faith according to International Indemnity is limited to a frivolous and unfounded denial of liability which it maintains was not supported by the evidence in this case.

(e) It contends that no actual demand for settlement of bodily injury claim was ever unequivocally made to the insurer. The only notice to International Indemnity was on a PIP claim, a separate action against another insurer and against International Indemnity. The PIP claim came to International Indemnity's attention at the time of the taking of a deposition when the records and documents pertaining to the claims of the insured Lovett and Collins were made available to International Indemnity. It maintains that merely being exposed to the paperwork does not constitute a demand for settlement within the policy limits.

(f) International Indemnity complains that reasonable notice of the accident and potential claim was never seasonably brought to their attention and thus there was no compliance with notice requirements of the contract. In addition, it claims there was no evidence that the insurer had any actual opportunity to settle the bodily liability because the notice related to PIP and not to bodily liability coverage which is the subject of this litigation.

(g) It also contends that the plaintiff-intervenor Collins should have been dismissed or a separate trial ordered. International Indemnity maintains that Collins was only entitled to the $10,000 policy limits and when that was paid into the registry of the court Collins had no further interest. It contends that Collins' presence in the case complicated the issues and prejudiced the insurer.

(h) International Indemnity and Alexander contend that Alexander was only the general agent and not responsible for the payment. It was contended therefore that Alexander should have been removed

from the suit.

(i) It is contended that because Lovett (the plaintiff in this action) was a defendant in the suit by Collins the contribution of the insurer toward the judgment against Lovett in favor of Collins in the amount of $415,377 should be reduced by the amount of the PIP recovery.

(j) It is contended the broker Craig's wrongdoing legally cannot be imputed to the insurer as a substitute for the insurer's bad faith so as to justify any judgment in excess of the policy limit of $10,000.

(k) It is contended the evidence reflects no bad faith in the insurer's refusal to defend Lovett.

(l) International Indemnity complains the trial court erred allowing in evidence the demand for PIP coverage, arguing the PIP demand was irrelevant and prejudicial because the trial court refused International Indemnity's proffer of settlement documents between the plaintiff Collins and a PIP insurer indicating settlement of the claim in full.

(m) Upon the same basis as the denial of the settlement documents, International Indemnity urges error in the denial of admission of a purported covenant not to sue flowing from the PIP settlement.

(n) It also complains the trial court erred in denying motions for mistrial based upon references in closing argument by the plaintiff's attorney to the size and wealth of the insurance company in relation to the individual plaintiff (Lovett).

(o) International Indemnity complains the trial court erred in refusing to charge that the suit was one on contract and that the measure of damages was limited to the contractual limits of the policy; that failure to pay a specifically demanded sum does not provide evidence of bad faith; that bad faith embraces more than negligence or bad judgment and that an unsuccessful defense does not necessarily establish bad faith; that failure to charge the principles of comparative bad faith by Lovett and Lovett's failure to mitigate his damages was error; that the court erred by charging that liability for a sum in excess of the face value of coverage may be established by showing merely that the insurer was negligent in declining to settle within policy limits; and that by highlighting the requirement that the insurer must treat the insured's interest on an equal plane with that of the insured's own interest the charge was made argumentative and expressed the opinion of the court.

2. As indicated hereinabove, International Indemnity was arguing from the basis that penalties, attorney fees, and excess coverage are governed by statute. Its whole argument therefore proceeds on the basis that this case is one based on contract and that excess coverage based upon bad faith relates to a contractual failure to defend an insured resulting in excess liability to the insured. As we view the case,

however, this case is not based upon the terms of the contract nor is the excess judgment based upon a bad faith failure to defend Lovett rising from the contractual obligation so to do. The liability of the insurer in this case is based upon the fact that there was purportedly a timely offer of settlement within the limits of coverage and that the insurer negligently or in bad faith refused to adjust the account or to defend the insured (after the offer of settlement) when the amount of damages between the injured party and tortfeasor was being established. It is clear therefore that the right to excess liability rests within the rationale established by *State Farm Mut. Auto. Ins. Co. v. Smoot*, 381 F2d 331 (5th Cir. 1967), and subsequently recognized in *McCall v. Allstate Ins. Co.*, supra. In order to establish his case, Lovett needed only to establish to the jury's satisfaction that International Indemnity's refusal to defend the issue of damages or settle within the policy limits prior to that ultimate litigation, was motivated or caused by negligence, fraud, or bad faith as established in an earlier case of *Francis v. Newton*, 75 Ga. App. 341 (43 SE2d 282). See *McCall v. Allstate Ins. Co.*, supra, at p. 871 (1). It is manifest from the transcript that the Lovetts chose to establish this bad faith as the predicate for the excess coverage.

Inasmuch as it is beyond dispute that the insurer did not afford Lovett a defense or accept an offer to settle within the limits of the policy coverage, the issue for the jury was to decide whether that refusal was manifested by bad faith. See *Alexander Underwriters Gen. Agency v. Lovett*, supra at p. 266 (4). Conflicting evidence was submitted by the insurer and the insured raising a close issue as to whether the insurer was sufficiently aware of Lovett's contentions that the cancellation of his policy was unknown to him so that the prudent course of action by the insurer was to file a defense with reservation and seek a declaratory judgment. This court had recognized in its first opinion in this case that ordinarily such was the proper and safe course of action. The jury then was to decide whether Lovett had actually placed the insurer on timely notice that the tort claimant was willing to settle within policy limits, and whether assuming such notice to the insurer, the failure thereafter to afford such defense was in good faith by the insurer or so negligent as to indicate bad faith by the insurer. It is apparent that the jury after considering all the evidence, hearing the arguments of counsel and charge of the court concluded that International Indemnity acted in bad faith in taking no action to settle the claim or to defend Lovett. We are hardly in a position to conclude that there was no evidence to warrant such a verdict. International Indemnity had received no less than 35 pieces of correspondence including a "Smoot letter" offering to settle the demand within the policy limits. Though International Indemnity argues that the letter was not addressed to them, was not in their files

and related to a PIP claim, the jury nevertheless had to decide whether the insurance company was sufficiently on notice to know that Collins was willing to settle within the limits of the coverage in the suit against Lovett for bodily injury other than PIP. Obviously the jury so concluded. The question of the insurer's good faith or lack thereof is one of fact for the jury as we have previously observed and the jury's determination on this issue will be upheld if there is any evidence to support it. *Binns v. MARTA*, 250 Ga. 847, 848 (301 SE2d 877). Irrespective of whether we agree with that conclusion, we do in fact find sufficient evidence to support the determination of bad faith in the refusal to defend or adjust the claim.

3. Reference International Indemnity's motion to dismiss Collins, we can find no specific written motion to dismiss nor is such a motion apparent in the record. The insurer in the pretrial order concurs that there is no question of misjoinder. Inasmuch as the trial court did not have a motion to rule on and the insurer did not object to the absence of such a ruling and indeed had consented to Collins being added to the action in the first place, we find no substance to the denial of the motion to dismiss Collins. *Dehler v. Setliff*, 153 Ga. App. 796, 799 (2) (266 SE2d 516); *Bell v. Brewton*, 139 Ga. App. 463, 465 (5) (228 SE2d 600).

4. Our examination of the record in relation to the motion to reduce the verdict by the amount of PIP benefits available discloses an inherent flaw in this motion. The law is clear that in order for the trial court to grant such a motion (1) the benefits must have been paid or (2) the benefits are available for payment. *City Council of Augusta v. Lee*, 153 Ga. App. 94, 98 (2) (264 SE2d 683). At the time the motion in this case was made, no benefits had been paid by International Indemnity for economic loss under PIP and International Indemnity was vehemently denying coverage under the policy and contending that no funds were available for any purpose. Inasmuch as the benefits had not been paid and were not available on the dates that International Indemnity made its motion, there was no error in denying the motion in limine made by the insurer. In relation to the issue of whether a write-off or reduction on appeal was available to International Indemnity, we must conclude that such a right is held solely by Lovett at the time the original case went into default. This case is one of excess liability coverage under a contract. The excess liability is directly imposable upon Lovett and indirectly the responsibility of the insurer if excess liability coverage is eventually established. Lovett did not make a motion to limit at his trial on the damage issue; therefore, Lovett's insurer cannot complain of the omission of the insured at this late date. See *Leader Nat. Ins. Co. v. Smith*, 177 Ga. App. 267, 272 (4) (339 SE2d 321).

5. International Indemnity urged as error the refusal to admit

evidence of settlement negotiations and a covenant not to sue after Lovett had introduced evidence that Collins was willing to settle PIP within the limits of the policy and this agreement to settle had been brought to the attention of an officer of International Indemnity. However, the attempted settlement was admitted by the trial court solely for the purpose of allowing the jury to determine if the insurer had been placed on notice that Collins was willing to settle within the limits of the policy and whether it would have been prudent for the insurer to settle or to afford Lovett a defense with reservation followed by the normal declaratory judgment.

Insofar as the admissibility of the desire to settle within the limits of the policy, because this was relevant to the issue of notice, it was proper for the trial court to admit this evidence and submit it to the jury with appropriate instructions. *Georgia Farm Bureau Mut. Ins. Co. v. Latimore*, 151 Ga. App. 786, 789 (261 SE2d 735).

Moreover, the overriding issue before the jury pertained to excess judgment. Therefore, all evidence proffered by either side necessarily should have been limited to evidence of good faith efforts or lack of good faith. Evidence of a covenant not to sue as such related to a release, an issue already decided adversely to the insurer and thus did not relate to the issue of good faith. See *Farris v. Pazol*, 166 Ga. App. 760, 762 (2) (305 SE2d 472).

6. During closing argument counsel for Lovett made reference to the "big" or "wealthy" insurer and that the jury should send an appropriate message to the insurer concerning refusal to settle or defend. Prompt and appropriate objection was made to the comment and a motion in each case was made and denied. In its ruling the trial court directed the jury to erase the comment from their minds and informed the jury that the case should be decided on its own merits without regard to the size, influence or affluence of either party.

We are satisfied that the corrective action taken by the trial court in each of these instances was sufficient to remove any harm and that no abuse of discretion appears in its denial of the motion for new trial. *London v. State*, 142 Ga. App. 426, 427 (1) (236 SE2d 158). Moreover, it has been held that where the court instructs the jury to disregard the remark and indicates that the remarks were inappropriate, this in effect amounts to a rebuke of counsel. See *Spell v. State*, 225 Ga. 705, 708-709 (3) (171 SE2d 285). Moreover, these comments did not for the first time reveal the availability of insurance for the jury was fully aware that an insurance company was involved and of Lovett's contentions that the insurer had disregarded his right of coverage in bad faith. We are satisfied that the trial court in this case did not abuse its discretion in overruling the motions for mistrial and that the charge of the court to erase the comment from the minds of the jurors was sufficient to remove any potential prejudice. See *Inter-*

*national Indem. Co. v. Coachman*, 181 Ga. App. 82, 90 (7) (351 SE2d 224). Moreover, if International Indemnity deemed the instruction given or the action taken inadequate to erase any error or prejudice, it was incumbent upon International Indemnity to request additional instruction or renew its motion for mistrial, neither of which was done. See *Pitts v. State*, 141 Ga. App. 845, 846 (234 SE2d 682).

We further conclude that lack of prejudice in the ruling is manifest in the verdict of the jury. In his original complaint, Lovett sought general damages in the amount of the recovery in favor of Collins, interest and punitive damages of $2 million and subsequently amended to include attorney fees. The verdict of the jury reflected the exact amount of attorney fees that Lovett requested, the exact amount of recovery in favor of Collins, but only $25,000 punitive damages. Looked at in perspective, the amount of punitive damages was less than the interest that had accrued on the judgment against Lovett to the date of trial ($25,000 vs. $83,075). We are satisfied that this is indicative of the lack of prejudice. See *Progressive Cas. Ins. Co. v. West*, 135 Ga. App. 1, 3 (217 SE2d 310).

7. Appellant's requested charge no. 4 pertained to the measure of liability on an insurance contract where the insurer had refused to afford coverage or defense on the basis of that contract. This case related to the excess liability on an insurance contract flowing from the gamble with Lovett's money by the insurer in refusing a settlement or affording a defense. Therefore, International Indemnity's requested charge no. 4 was based on contract and ignored a "Smoot" demand, thus was not responsive to the issue or the evidence and was properly denied. *U. S. Fidelity &c. Co. v. Evans*, 116 Ga. App. 93, 95 (156 SE2d 809). See also *London v. State*, supra. Appellant's requested charge nos. 4 and 6 were not correct statements of law and were not responsive to the law or the issues. International Indemnity had consistently and absolutely denied all liability by virtue of lack of coverage and consistently refused to defend or settle within the policy limits maintaining no coverage. Thus the request to charge was inappropriate and properly refused. *SCM Corp. v. Thermo Structural Prods.*, 153 Ga. App. 372, 379 (7a) (265 SE2d 598).

Moreover, though the trial court refused International Indemnity's requested charge no. 12, the court did charge a pattern charge regarding contracts. Though not given in the language requested, it was given in substantial compliance with the request and therefore was not improper. *Atlanta & West Point R. Co. v. Armstrong*, 138 Ga. App. 577, 581 (5) (227 SE2d 71).

We find no error in the refusal to give International Indemnity's charge nos. 13 and 14 relating to comparative bad faith and diminution of damages. We are satisfied that the evidence reflects that Lovett did all he could to procure a defense for himself and to avoid

liability. Having notified International Indemnity of the pending lawsuit and ultimately of the offer by Collins to settle within the policy limits, the law required International Indemnity to show good faith and prove that its acts or omissions were in good faith. By its verdict, the jury sustained the position that by refusing to defend International Indemnity lost all opportunity to contest the negligence of the insured or the injured person's right to recover. *Leader Nat. Ins. Co. v. Smith,* supra at pp. 271-272 (4). Though International Indemnity has consistently taken the position that this suit is one in contract, we have concluded that the insured's (Lovett's) suit was not upon the contract of insurance but rather in tort and involved a duty by the insured and an alleged breach of that duty. The two requested charges relate to contractual duties and not the omission of duties giving rise to a tort. *U. S. Fidelity &c. Co. v. Evans,* supra at p. 94 (2).

Likewise, we conclude the trial court did not err in refusing to give requested charges 15, 16, and 19 on the issue of bad faith. The court charged the superior court judge's pattern charges on bad faith which is essentially the same as requested charge 16. The requested charge 15 is language taken from a dissenting opinion in *U. S. Fidelity &c. Co. v. Evans,* supra at p. 103, and is not the law of this state. A charge must be correct in all respects in order for its omission to be error. *Durand v. Reeves,* 217 Ga. 492, 495 (3) (123 SE2d 552); *McMullen v. Vaughan,* 138 Ga. App. 718, 721 (3) (227 SE2d 440). Charge no. 19 likewise is not consistent with the law of this state. The charge assumes that International Indemnity could not have successfully effected a settlement of the suit within the policy limits even if it had desire to do so. However, we find the evidence is clear that International Indemnity could have settled within the policy limits long after this lawsuit had gone into default and before damages were proven and judgment entered. We conclude therefore there was no error in refusing to charge International Indemnity's request nos. 15, 16 and 19. *International Indem. Co. v. Coachman,* supra.

International Indemnity also complains of the giving of Lovett's request to charge on excess judgment as being allowed by the negligent or bad faith actions of the insurer. The request to charge is verbatim from language contained in *Francis v. Newton,* supra and consistent with *State Farm Mut. Auto. Ins. Co. v. Smoot,* supra. These cases establish the standards and requirements to hold an insurer liable for bad faith. The trial court charged the jury on the basis of the current state of the law; the jury applied this law to the facts and legally arrived at their verdict. Notwithstanding International Indemnity's argument that negligence as a standard has been removed from the test of bad faith, there is no authority in support of this contention. The case of *U. S. Fidelity &c. Co. v. Evans* thus is still the law

of this state and supports the charge given by the trial court. We note that the asserted enumerations of error 23 and 24 relating to requested charges by International Indemnity were given verbatim by the trial court as requested. We find no merit to enumeration nos. 23 and 24.

There being no merit to any of the enumerations presented by appellant, International Indemnity has presented nothing to warrant a new trial.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED APRIL 17, 1987 —
REHEARING DENIED MAY 1, 1987 — 

*Fred S. Clark, Michael L. Wetzel*, for appellants.
*Clarence L. Martin, Robert E. Robinson*, for appellees.